J-S71005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ANDRE FIORENTINO, | |
| Appellant | No. 3103 EDA 2015 |

Appeal from the Judgment of Sentence September 24, 2015
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0000309-2014

BEFORE:  BOWES, PANELLA AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                          **FILED JANUARY 18, 2017**

Andre Fiorentino appeals from the judgment of sentence of twenty-five to fifty years incarceration imposed after a jury found him guilty of two counts each of aggravated assault – attempt to cause serious bodily injury, aggravated assault – attempt to cause serious bodily injury to an enumerated person, aggravated assault – attempt to cause serious bodily injury with a deadly weapon, aggravated assault – physical menace, person not to possess a firearm, and a single count of possession of a firearm with altered manufacturer's number.  We affirm.

The facts underlying this matter are as follows.  In the early morning hours of November 23, 2013, Appellant exited his mother's home along Merchant Street in Coatesville, Chester County.  At that time, Coatesville

---

* Former Justice specially assigned to the Superior Court.

police officers Joseph Thompson and Ryan Corcoran were patrolling Merchant Street in a marked police vehicle. Officer Thompson observed Appellant crouching near a parked car and decided to investigate further. As Officer Thompson approached Appellant he requested identification. Appellant turned away from the officer and attempted to flee. A short pursuit ensued.

While chasing Appellant, Officer Thompson ordered him to stop and threatened to tase him. Appellant did not heed the officer's warning, but rather, turned and fired a weapon at Officer Thompson. Both officers immediately drew their service weapons and returned fire, striking Appellant several times in the abdomen and legs. Appellant dropped his weapon as he collapsed to the ground. The officers approached Appellant, kicked the firearm out of his reach, and attempted to secure the area as people from the neighborhood began amassing in the street.

Appellant's injuries were treated at the scene by emergency medical technicians who arrived shortly thereafter. Appellant was then transported to Paoli Memorial Hospital's trauma ward. As they extracted Appellant from the ambulance, the paramedics moved a pile of his clothing, which had been removed during treatment of Appellant's injuries. A second firearm tumbled from the bundle. That firearm was taken into custody by an officer who had accompanied Appellant to the hospital.

Based on the foregoing, Appellant was charged with the abovementioned offenses as well as two counts of attempted murder. Appellant filed a motion to suppress incriminating statements made by him to Detective Joseph Nangle while hospitalized. He argued that Detective Nangle violated his rights under the 5th and 6th Amendments of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution by engaging him in conversation in the absence of counsel after he had been formally arraigned and without the benefit of **Miranda** warnings.[1] After a hearing on the matter, the trial court denied Appellant's motion by order of November 13, 2014.

The Commonwealth filed a motion *in limine* seeking to exclude evidence of, *inter alia*, prior altercations wherein Officer Thompson discharged his service firearm. Subsequently, Appellant served a subpoena on the Pennsylvania State Police ("PSP") requesting access to Officer Thompson's employment records, including investigation reports created by the agency's Internal Affairs Division. The PSP filed a protective order seeking to preclude from discovery all department records.

By order of March 6, 2015, the court directed PSP to turn over documents pertaining to a single prior incident involving Officer Thompson, but did not determine the admissibility of those documents at that time. The

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

court denied discovery of the remaining documents. By order dated June 8, 2015, the court granted the Commonwealth's motion to preclude improper character evidence of Officer Thompson, and denied Appellant's motion to introduce additional instances of misconduct by Officer Thompson.

Following a jury trial, Appellant was found guilty of the aforementioned crimes. However, the jury did not reach a verdict on the two counts of attempted murder. The court sentenced Appellant to an aggregate term of twenty-five to fifty years imprisonment on September 24, 2015. Appellant filed a notice of appeal on October 14, 2015, and complied with the court's directive to file a Rule 1925(b) concise statement of matters complained of on appeal. The court then authored its Rule 1925(a) opinion, which incorporated its orders of November 13, 2014, March 6, 2015, and June 8, 2015. This matter is now ready for our review.

Appellant raises four issues for our consideration:

I.   Whether the trial court erred in denying [Appellant's] motion to suppress the statement pursuant to the Sixth Amendment of the United States Constitution as well as Article I, Section 9 of the Pennsylvania Constitution.

II.  Whether the trial court erred in denying [Appellant's] motion to suppress under the Fifth Amendment of the United States Constitution, as well as Article I, Section 9 of the Pennsylvania Constitution, as well as protections provided pursuant to *Miranda v. Arizona*.

III. Whether the trial court erred in denying Appellant access to the entire file of former State Trooper/complaining witness Joseph Thompson.

IV.   Whether the trial court erred in precluding the defense from introducing evidence of four prior police shootings in which police officer Thompson was responsible. Appellant has the right to cross-examine police officer Thompson regarding this evidence as the officer's motive and bias to fabricate the circumstances of the shooting in this case. Particularly, Appellant should have been permitted to cross-examine Officer Thompson regarding the shooting that occurred in December of 2008, shortly after which he resigned from the State Police while that investigation was pending.

    A. [Appellant's] right to cross-examine the witness regarding motive/bias is essential to his right to present his defense.

    B. Evidence regarding this 2008 incident in conjunction with other evidence is admissible under 404(b).

    C. Evidence regarding the 2008 incident and other incidents not precluded under Rule 608(b)(2).

Appellant's brief at 7-8 (unnecessary capitalization omitted).

As a preliminary matter, we must determine whether this appeal should be dismissed since the notice of appeal indicated that it was taken from the conviction of June 29, 2015, as opposed to the judgment of sentence imposed on September 24, 2015. After identifying this procedural misstep, this Court issued a rule to show cause why the appeal should not be quashed as interlocutory. Appellant did not respond within ten days as required by the rule to show cause. Nevertheless, he filed a subsequent response and a motion to correct the docket explaining that counsel had converted to an online system of receiving documents from the Superior Court which had created confusion within counsel's office. In addition,

Appellant clarified that he had inadvertently included the wrong date on the notice of appeal, and requested that this Court correct the docket to reflect the appropriate date for the judgment of sentence.

We observe that the appellate rules "shall be liberally construed to secure the just, speedy, and inexpensive determination of every matter to which they are applicable." Pa.R.A.P. 105(a). That rule further provides that this Court may, on its own motion, "disregard the requirements or provisions of any of these rules[.]" *Id*. It is clear from the briefs presented that Appellant is appealing from his sentence imposed on September 24, 2015. Appellant filed a timely notice of appeal with respect to his imposition of sentence. He complied with Rule 1925(b), and the trial court issued its own Rule 1925(a) opinion addressing Appellant's claims. Furthermore, the Commonwealth has not objected to Appellant's mistaken notice of appeal, nor called for this case to be dismissed. Rather, the Commonwealth filed a brief responding to the issues raised in Appellant's 1925(b) statement. Accordingly, we order that the docket be corrected to reflect that Appellant's notice of appeal was taken from the September 24, 2015 judgment of sentence, and we will proceed to consider the merits of this case.

As Appellant's first two issues concern the denial of his motion to suppress certain statements, we set forth our standard of review at the outset. In cases involving a review of the denial of a defendant's suppression motion, our standard of review

is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court] is bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [] plenary review.

*Commonwealth v. Jones*, 121 A.3d 524, 526-527 (Pa.Super. 2015) (quoting *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotation marks omitted)).

The following facts, relevant to Appellant's first two issues, were gleaned from the record of the suppression hearing. On November 25, 2013, Detective Nangle approached Appellant in Paoli Memorial Hospital in order to determine if he was willing to speak to investigators prior to his arraignment, which was scheduled to occur later that day. Appellant informed Detective Nangle that he was represented by counsel and did not wish to speak with him.

On November 27, 2013, Detective Nangle went to the hospital to inquire whether Appellant could be safely transferred to Chester County Prison in light of his injuries. While he was waiting for hospital staff to

provide that information, Detective Nangle entered Appellant's hospital room. The detective greeted Appellant and proceeded to engage the correctional officer charged with guarding Appellant in conversation. While the two officers were talking, Appellant interjected and asked Detective Nangle whether all the guns involved in the incident would be tested. Detective Nangle assured him that they would be. After a brief pause, Appellant then stated that he recently received the Kel Tec 40, the firearm recovered from the ambulance, from another person. He added that he had possessed the revolver recovered from the crime scene for some time. Detective Nangle did not respond to Appellant's statements, but rather, left the room shortly thereafter upon hearing from hospital staff that Appellant could not be moved at that time.

Appellant first contends that the trial court erred in failing to suppress the statements he made to Detective Nangle, without counsel present, pursuant to the protections afforded by the Sixth Amendment of the United States Constitution and Section I, Article 9 of the Pennsylvania Constitution.

The Sixth Amendment right to assistance of counsel, and its Pennsylvania counterpart, attaches at the initiation of formal judicial proceedings against an individual by way of formal charge, preliminary hearing, indictment, information, or arraignment. *Commonwealth v. Briggs*, 12 A.3d 291, 324 (Pa. 2011). Statements made by the individual after judicial proceedings have been initiated which are "deliberately elicited"

by police, without the individual making a valid waiver of the right to counsel, are deemed a contravention of this right.  *Id*.  We note that "deliberate elicitation" is not limited to police conduct which constitutes interrogation, but also, it will be found "in every instance where the police 'deliberately and designedly set out to elicit information from [an individual].'" *Id*.  (citation omitted).

In this vein, Appellant alleges that Detective Nangle's encounter with him in his hospital room was pretextual and designed to elicit incriminating statements.  He posits that the detective was aware that Appellant was represented by counsel, and that Appellant had been arraigned two days prior.  Alternatively, Appellant argues that his statements to Detective Nangle should have been suppressed pursuant to the Fifth Amendment protections espoused in *Miranda*, *supra*.  The Fifth Amendment right to counsel attaches when an individual in police custody requests representation of counsel and is subject to police interrogation.  *Briggs*, *supra* at 321-322.  Moreover, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. at 322 (citation omitted). Appellant maintains that Detective Nangle's presence in his hospital room could have no purpose other than to elicit information from him.  As

Detective Nagle did not provide Appellant with the requisite *Miranda* warnings prior to their conversation, he concludes that his subsequent statements were obtained in violation of the Fifth Amendment.

Upon review of the suppression record, we find the trial court did not err in denying Appellant's motion to suppress. Detective Nangle testified that his presence in Appellant's hospital room was premised solely upon determining whether Appellant could be transferred to the county prison. Other than greeting Appellant and answering his questions regarding the testing of the firearms involved in his shooting, Detective Nangle neither spoke to, nor directly questioned, Appellant. The detective's mere presence in the room does not amount to "deliberate elicitation" or "interrogation" as it was not clearly calculated to elicit a response from Appellant. *Briggs*, *supra* at 325 (finding no deliberate elicitation where the record did not evince that the trooper "deliberately utilized any methods designed to improperly induce [the defendant] to make a statement in the absence of counsel, such as making emotional appeals to conscience, discussing the facts of the case with him, or confronting him with evidence calculated to provoke a response[.]"). Rather, Appellant volunteered information to the detective without prompting as Detective Nangle spoke with the corrections officer stationed in his room. Hence, those statements were not afforded protection under the United States Constitution or the Pennsylvania Constitution, and Appellant is not entitled to relief on either claim.

Next, the Appellant assails the trial court's order granting him only partial access to Officer Thompson's state police personnel file. Appellant sought Officer Thompson's personnel file in order to review past allegations of police misconduct, especially as it concerned certain prior incidents wherein Officer Thompson discharged his service weapon. The PSP, in turn, sought to quash Appellant's subpoena *duces tecum*, and Appellant responded by filing an additional motion seeking disclosure of the PSP's internal affairs investigative reports. The trial court granted each party's motion in part, permitting Appellant access to the files related to a single prior shooting in December 2008. Appellant contends the court's refusal to permit disclosure of the entire file was an abuse of discretion since the court's *in camera* review of the files did not sufficiently ensure Appellant's right to a fair trial.

Evidentiary decisions are left to the trial court's discretion and will not be reversed absent a clear abuse of that discretion. **Commonwealth v. Hicks**, 91 A.3d 47, 52 (Pa. 2014). In order to gain access to the personnel records of a police officer, "a defendant must first articulate a reasonable basis for his request; a criminal defendant is not entitled to a 'wholesale inspection' of investigatory files." **Commonwealth v. Blakeney**, 946 A.2d 645, 661 (Pa. 2008). With regard to *in camera* review, "this Court has held that a defendant is entitled to court inspection of investigatory files only

where there is an articulable reason to believe that inspection would lead to the discovery of some relevant evidence." *Id*. at 660-661.

The trial court determined that Appellant had not sustained his burden of establishing a reasonable basis for requesting Officer Thompson's PSP records. Despite that finding, the court nevertheless reviewed the records *in camera*. The records disclosed six incidents involving Officer Thompson. Three of those incidents did not involve a shooting, but rather, involved attempts by Officer Thompson to disable fleeing vehicles. Of the remaining three incidents, only one incident, occurring in December 2008, appeared "remotely relevant" to Appellant's case. Order, 3/6/15, at unnumbered 4. Thus, "in an abundance of caution" the court permitted discovery of documents pertaining to that incident while reserving its discretion to determine their admissibility. *Id*.

In so finding, the court distinguished three cases relied upon by Appellant: *Commonwealth v. Shands*, 487 A.2d 973 (Pa.Super. 1985), *Commonwealth v. French*, 611 A.2d 175 (Pa. 1992), and *Commonwealth v. Mejia-Arias*, 734 A.2d 870 (Pa.Super. 1999). In those cases, access to police officers' personnel files was premised upon allegations of police misconduct closer in time or related to the circumstances surrounding that defendant's arrest. The trial court found that the incidents Appellant desired to review had occurred several years

before Appellant's arrest, and thus, were not relevant to the circumstances surrounding his arrest.

Instantly, Appellant subpoenaed the PSP in order to gain access to Officer Thompson's personnel file after it was disclosed that the officer had been involved in a number of previous shootings. In his brief, Appellant relies on the same three cases distinguished by the trial court below. Instead of renewing his contention that he had a reasonable basis for reviewing those files, *i.e.* that the officer's past misconduct was relevant to the circumstances surrounding Appellant's arrest, Appellant now contends that such an evaluation is a matter of fairness, and that Officer Thompson's past alleged misconduct must be studied from the perspective of a zealous advocate. We find no merit in Appellant's position.

The first such incident, occurring on June 6, 2006, involved a police intervention into a suspected drive-by shooting. The police had learned of the scheduled shooting and placed officers in position at the scene. The suspects fired shots, and the police, including Officer Thompson, returned fire during the ensuing pursuit. No one was injured. Subsequent investigation deemed Officer Thompson's actions justified, and no charges were filed. The second incident occurred on January 21, 2007, during a traffic stop. Shots were exchanged between Officer Thompson and his partner and the driver and passenger of the vehicle. Again, the PSP found the use of force justified and no charges were filed. Finally, Officer

Thompson discharged his weapon a third time during a traffic stop on December 15, 2008, striking the passenger after that passenger reached for a gun. Again, the officer's actions were found to be justified and no charges were filed.

Appellant presented no reasonable and articulable basis for finding that access to Officer Thompson's entire personnel record was warranted herein. Furthermore, the previous incidents involving Officer Thompson were far removed in time, and did not involve the circumstances surrounding Appellant's arrest. **Compare Mejia-Arias**, **supra** (permitting review of officers' personnel files for potentially exculpatory, non-privileged information where defendant was arrested by officers being investigated for falsifying warrants). Hence, we discern no abuse of discretion in the trial court's denial of Appellant's request for access to Officer Thompson's entire PSP personnel record.

Appellant also challenges the trial court's preclusion of certain evidence related to Officer Thompson's activities as a police officer on several bases. First, he contends that prohibiting the defense from cross-examining Officer Thompson regarding his alleged misconduct violated Appellant's rights under the Confrontation Clause. Appellant maintains that the officer's involvement in these events motivated the officer to fabricate evidence and testify falsely. Thus, Appellant concludes, the trial court erred in prohibiting him from questioning the officer about these incidents.

Determinations regarding the admissibility of evidence are reviewed for an abuse of discretion. **Commonwealth v. Sitler**, 144 A.3d 156, 163 (Pa.Super. 2016). An abuse of discretion "is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Id**. (citation omitted).

The Confrontation Clause of the Sixth Amendment provides a defendant with a constitutional right to conduct cross-examination of a witness in order to reveal any motive that the witness may have to testify falsely. This clause

> guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings means more than being allowed to confront the witness physically. Indeed, the main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. Of particular relevance here, we have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, and prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

*Commonwealth v. Bozyk*, 987 A.2d 753, 756 (Pa.Super. 2009) (internal citations and quotation marks omitted). Where the defense seeks to cross-examine a police witness regarding prior misconduct, that conduct must be related to the defendant's underlying criminal charges and establish a motive to fabricate. *Id*. at 757. If the prior police behavior is unrelated to the present matter and irrelevant, "the trial court is permitted to restrict questioning on the prior incident." *Id*.

The trial court found that Officer Thompson's prior conduct was unrelated to Appellant's criminal charges and did not establish a motive to fabricate. It noted that Officer Thompson was not under investigation for his prior actions and that he was never disciplined for his role in those events. Specifically, the court found the 2008 incident collateral and irrelevant to the current proceedings. With regard to any other purported misconduct, the court concluded that it had no bearing on Appellant's case. Hence, it found Appellant was properly precluded from cross-examining Officer Thompson concerning his police record. We find the trial court did not abuse its discretion in determining that evidence of Officer Thompson's past conduct, for which he was investigated but never disciplined, was collateral to Appellant's defense, and therefore, relief is not warranted.

Second, Appellant claims that evidence pertaining to Officer Thompson's supposed on-the-job misconduct was admissible under Pa.R.E. 404(b).[2] We observe,

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. In determining whether evidence of prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Sitler*, *supra* at 163 (internal citation omitted); Pa.R.A.P. 404(b). In support of his position, Appellant emphasizes three other cases wherein Officer Thompson was alleged to have acted without reasonable suspicion. Appellant also notes two complaints filed by Coatesville citizens calling into question Officer Thompson's activities. He claims that such evidence demonstrates a pattern of unconstitutional conduct, and thus, he should be permitted to introduce that evidence to establish Officer Thompson's motive, intent, and a common scheme of violating citizen's rights without reasonable suspicion.

---

[2] We address the merits of Appellant's contention, but note that no Pennsylvania court has found that the exceptions provided in Pa.R.E. 404(b)(2) apply to prior bad acts committed by a party other than the defendant since those exceptions appear to concern the crimes charged.

- 17 -

The trial court characterized Appellant's desire to proffer evidence of Officer Thompson's conduct as improper character evidence, and thus, it was not admissible under Pa.R.E. 404(b). The court opined that, even if the evidence was offered for a permissible purpose under Pa.R.E. 404(b)(2), its probative value was outweighed by its potential for unfair prejudice since the officer's past actions had no nexus to Appellant's case. We find the court did not abuse its discretion in barring introduction of this evidence.

Instantly, Officer Thompson merely approached Appellant and requested his identification after witnessing him crouched by a vehicle. Thus, reasonable suspicion was not required to justify the encounter. *See **Commonwealth v. Baldwin***, 147 A.3d 1200 (Pa.Super. 2016) (police officer request of identification was mere encounter and did not require reasonable suspicion). Appellant fled before a stop could be initiated and fired a weapon at the pursuing officers. Thus, past allegations that Officer Thompson acted without reasonable suspicion or engaged in other impropriety have no bearing on this matter. Thus, the court properly excluded such evidence.

Lastly, Appellant asserts that evidence of Officer Thompson's prior misconduct was admissible under Pa.R.E. 608(b)(2). Rule 608(b) states:

(b) Specific Instances of Conduct. Except as provided in Rule 609 (relating to evidence of conviction of crime),

(1) the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic

- 18 -

> > evidence concerning specific instances of witness' conduct; however,
>
> > (2) in the discretion of the court, the credibility of a witness who testifies as to the reputation of another witness for truthfulness or untruthfulness may be attacked by cross-examination concerning specific instances of conduct (not including arrests) of the other witness, if they are probative of truthfulness or untruthfulness; but extrinsic evidence thereof is not admissible.

Pa.R.E. 608(b). Appellant maintains that the trial court erred in finding that he sought admission Officer Thompson's past acts as character evidence since such evidence was relevant to establish a pattern of conduct. According to Appellant, Officer Thompson's course of conduct signified a motive to testify falsely in this case, and reflected his bias against Appellant. Thus, Appellant should have been permitted to cross-examine the officer regarding those specific instances in order to present a picture of the officer's improper motive and bias as a whole, thereby impeaching his credibility as a witness.

Here, the trial court found that specific instances of Officer Thompson's prior conduct were not admissible pursuant to Pa.R.E. 608 and we discern no abuse of discretion. The allegations of Officer Thompson's past misconduct, whether viewed individually or as a whole, do not bear upon his character for truthfulness. His involvement in prior shootings and supposed failure to act with reasonable suspicion are not probative of his credibility and reputation for truthfulness. Hence, Rule 608 does not apply.

Application for correction of the docket granted.  Judgment of sentence

affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/18/2017