**COMMONWEALTH of Pennsylvania**

v.

**Euleterio MEJIA–ARIAS.**

**Appeal of Attorney General, Subpoenaed Witness, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1998.

Filed June 14, 1999.

Andrea F. McKenna, Deputy Atty. Gen., Harrisburg, for appellant.

Bradley S. Bridge, Asst. Public Defender, Philadelphia, for Mejia-Arias, appellee.

Before FORD ELLIOTT and STEVENS, JJ., and CERCONE, President Judge Emeritus.

FORD ELLIOTT, J.:

¶ 1 The Attorney General asks us to decide whether a defendant may subpoena the personnel files of Bureau of Narcotics Investigation ("BNI")[1] officers who participated in his arrest. The trial court refused to quash the subpoenas at issue in this case. While we agree with the trial court that defendant/appellee was entitled to review certain information in the files, we also find that the subpoenas, as drafted, were overly broad. As a result, we vacate the trial court's order and remand. The background necessary to decide this issue follows.

¶ 2 Narcotics Agent Charles Micewski of the BNI arrested appellee on January 24, 1996 after searching his residence pursuant to a residential search warrant and discovering approximately 300 grams of cocaine. (Notes of testimony, 2/22/96 at 5–10.) The affidavit of probable cause pursuant to which the search warrant was issued was based on information provided by Agent Micewski. Narcotics Agent John McLaughlin was also involved in appellee's arrest. (R. at D–2.)

¶ 3 After learning that the Philadelphia District Attorney's Office was dismissing a large number of cases involving Agents Micewski and McLaughlin, appellee caused to be issued two subpoenas *duces tecum* requesting, *inter alia*, the personnel and investigation files regarding the two agents. (R.R. at 1a, 3a.) The second subpoena, issued on October 1, 1996, also requested production of a document described as "the Eric Noonan Report." (R.R. at 3a.)

¶ 4 The Attorney General filed a motion to quash the subpoenas. On December 23,

---

1. The BNI is an agency operated by the Office of Attorney General.

1996, the Honorable Myrna Field denied the Attorney General's motion to quash and ordered both the Attorney General's Office and the Philadelphia Police Department to permit defense counsel to examine the personnel and investigatory files of the agents, subject to a confidentiality agreement.[2] (R.R. at 4a.) The Attorney General's Office did not comply with this order.

¶5 On January 17, 1997, the court amended its December 23, 1996 order and granted the Attorney General's motion to quash with respect to the "Noonan Report" only, while continuing to allow defendants [3] to examine the personnel files, subject to the restrictions delineated in the December 23, 1996 order. (R.R. at 5a.) On January 22, 1997, the Attorney General filed an application to amend the Order of January 17, 1997, to contain language specified at 42 Pa.C.S.A. § 702(b); namely, that the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter...." (R. at D–9, quoting 42 Pa.C.S.A. § 702(b).) This application was denied by order entered February 11, 1997. (R.R. at 6a.) The Attorney General then filed a petition for review in this court pursuant to Chapter 13 of the Rules of Appellate Procedure. Permission for review was granted by order entered May 14, 1997. (R.R. at 7a.) We thus have jurisdiction to entertain this appeal.

¶6 The Attorney General presents the following issue for our review:

In the absence of a specific request for information bearing on a specific charge or defendant, or legitimately affecting the credibility of a witness, should defense counsel have **carte blanche** to examine the personnel files of law enforcement agents?

Appellant's brief at 4. The simple answer to this inquiry is "No." As is frequently the case, however, the proper resolution of such questions is generally not so simple.

¶7 The Attorney General does not dispute the District Attorney's testimony that he **nol prossed** 53 cases in which Agent McLaughlin was an essential witness based on information that Agent McLaughlin may have lied in a search warrant.[4] Nor does the Attorney General dispute that the District Attorney **nol prossed** 60 cases involving Agent Micewksi. Instead, the Attorney General argues that its personnel files were not used by the District Attorney's office in deciding which cases to **nol pros**, and that these files are therefore not *Brady*[5] material. (Appellant's brief at 15.) To establish a framework within which to consider whether or when appellee is entitled to review the personnel files, we must first consider the purposes for which he sought review.

¶8 Appellee initially sought the BNI officers' personnel files for two purposes. The first was to support an equal protection challenge based on the District Attorney's allegedly arbitrary decision to **nol pros** numerous cases involving the two BNI agents while pursuing its prosecution of appellee. Appellee subsequently dropped this basis for seeking the files. (Appellee's brief at 12.)

---

2. Appellee also subpoenaed the Philadelphia Police Department, which complied with the court's order and which is not a party to this appeal.

3. The January 17, 1997 order refers to "defendants" because it was addressing motions to quash subpoenas filed in both this case and in *Commonwealth v. Michael Griffin*, C.P. No. 93–11–2650.

4. Arnold Gordon, Esq., First Assistant District Attorney, testified that his office chose not to proceed in any case where Agent McLaughlin was a necessary or essential witness because there was evidence that he may have lied in a search warrant. (R.R. at 146a.)

5. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The basic principle underlying *Brady* has been codified in our Rules of Criminal Procedure at Pa. R.Crim.P. 305, 42 Pa.C.S.A.

¶ 9 The second purpose was to challenge the affidavit of probable cause supporting the search warrant by impeaching the BNI officers' credibility. (*Id.* at 12–13.) Appellee sought evidence that the BNI agents "fabricated or lied about probable cause, committed perjury, etc., in this and in other cases." (*Id.* at 15.) In particular, appellee's counsel sought to learn the names of witnesses who could testify as to the officers' pattern or practice of lying in order to obtain search warrants. (*Id.* at 14.) If the files contained such evidence, it could be exculpatory. *See Commonwealth v. Herrick*, 442 Pa.Super. 412, 660 A.2d 51, 60 (1995) ("Exculpatory evidence is evidence that is material to a determination of guilt or innocence or affects the credibility of key prosecution witnesses. Moreover, evidence of fabrication is always exculpatory[ ]"), *appeal denied*, 543 Pa. 710, 672 A.2d 305 (1996) (citations omitted). *See also Commonwealth v. D'Angelo*, 437 Pa. 331, 263 A.2d 441 (1970) (holding that where a police officer-affiant made untrue or misleading statements in the affidavit of probable cause, the warrant was invalid and the use of evidence resulting from the search based thereon was constitutionally proscribed).

¶ 10 Furthermore, in Pennsylvania, a defendant may attack the reliability of an affidavit of probable cause without first showing the potential falsity of the facts recited in the affidavit. *Commonwealth v. Hall*, 451 Pa. 201, 206–09, 302 A.2d 342, 345–346 (1973). *See also Commonwealth v. Miller*, 513 Pa. 118, 518 A.2d 1187 (1986) (distinguishing the Pennsylvania *Hall* rule

from federal law which requires a substantial preliminary showing of falsity before a defendant is entitled to an evidentiary hearing on the issue of veracity).

¶ 11 The Attorney General argues, however, that the agents' personnel files are irrelevant because the Commonwealth has clearly expressed its intention not to call Agent McLaughlin as a witness.[6] (Appellant's brief at 16, 21.) Whether *the Commonwealth* calls the agents as witnesses or not, however, appellee is certainly entitled to call them as if on cross-examination at a suppression hearing. Clearly, the officers' truthfulness in swearing out the affidavit of probable cause supporting the search warrant that led to appellee's arrest is relevant to the charges against him; without the evidence seized during the search, the Commonwealth would not have had probable cause to arrest appellee. *See D'Angelo, supra.*

¶ 12 Nevertheless, we agree with the Attorney General that the personnel files may not be *Brady* material if they are not material within the possession or control of the Commonwealth, i.e., the District Attorney, as required by Pa.R.Crim.P. 305B(1)(a). *Commonwealth v. McElroy*, 445 Pa.Super. 336, 665 A.2d 813, 818 (1995), *appeal denied*, 544 Pa. 610, 674 A.2d 1073 (1996).[7] Even if the personnel files are not *Brady* material, however, "under the constitution of this Commonwealth, an accused's rights of confrontation and compulsory process attach pre-trial."[8] *Commonwealth v. Kennedy*, 413 Pa.Super.

---

6. It is unclear whether the Commonwealth intends to call Agent Micewski as a witness.

7. *But see* Wayne R. LaFave, Criminal Procedure § 20.7(e), at 893–894 (2d ed.1992) (noting that some courts have extended the prosecution's obligation under *U.S. v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), to the files of those police agencies that were responsible for the primary investigation in the case, and that other courts have suggested that the prosecution, on a specific request for potentially exculpatory material not available to the defense, may have a *Brady*

obligation to attempt to obtain such material even from an independent agency not involved in the primary investigation).

8. Article I, Section 9 of the Pennsylvania Constitution provides, *inter alia*, that an accused has a right to meet the witnesses against him face to face and to have compulsory process for obtaining witnesses in his favor. *But cf. Pennsylvania v. Ritchie*, 480 U.S. 39, 59–60, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (federal confrontation clause rights are trial rights and do not attach pre-trial) (plurality opinion).

95, 604 A.2d 1036, 1044 (1992) (*en banc*), *appeal denied*, 531 Pa. 638, 611 A.2d 711 (1992). Therefore, because appellee is seeking witnesses in his favor, i.e., witnesses from other cases involving the BNI officers responsible for his arrest in which the officers allegedly fabricated the facts underlying an affidavit, appellee has asserted that due process, compulsory process, and the right to present a defense require that he have access to the subpoenaed material. *Id. See also Commonwealth v. French*, 531 Pa. 42, 52–53, 611 A.2d 175, 180 (1992) (denying defendant access to pre-trial statements of police officer/witnesses found in Internal Investigation Division files violated confrontation clause rights); *Commonwealth v. Lloyd*, 523 Pa. 427, 567 A.2d 1357 (1989) (denying defense counsel *in camera* access to contents of victim's *non-privileged* psychotherapeutic records in possession of hospital violated his compulsory process and confrontation clause rights under the Pennsylvania Constitution); *Commonwealth v. Davis*, 437 Pa.Super. 471, 650 A.2d 452, 460 (1994) (defendant's compulsory process and confrontation clause rights were violated when he was denied access to the victim's records prepared by a sexual assault counselor *who was called as a witness by the Commonwealth*), *affirmed*, 543 Pa. 628, 674 A.2d 214 (1996).[9]

█ ¶ 13 Furthermore, contrary to the Attorney General's assertions, a subpoena *duces tecum* was the proper means to secure information in the personnel files. *See McElroy*, 665 A.2d at 820–821 (material not discoverable pursuant to Pa. R.Crim.P. 305 may be secured through the service of a subpoena *duces tecum* upon the appropriate Commonwealth agency); *Davis*, 650 A.2d at 458 (finding no error in defendant's causing a subpoena *duces tecum* to be issued in order to seek records);

*Commonwealth v. Miller*, 406 Pa.Super. 206, 593 A.2d 1308, 1310–1311 (1991) (trial court's order requiring Women's Resource Center of Fayette County to release all records and information in its possession pertaining to the alleged victim of a sexual assault would be treated as a subpoena under Rule 9016); *U.S. v. Maloney*, 241 F.Supp. 49, 50 (W.D.Pa.1965) (a defendant has a right to have compulsory process to obtain witnesses on his behalf and therefore to have subpoenas issued).

¶ 14 The Attorney General claims, however, that the personnel files of law enforcement officers are protected by a privilege based upon the public's interest in protecting such files from inspection by criminal defendants. (*Id.* at 19.) In support of this argument, the Attorney General cites *Ritchie, supra*; *Commonwealth v. Gartner*, 475 Pa. 512, 381 A.2d 114 (1977); *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967); *Commonwealth v. Ross*, 424 Pa.Super. 570, 623 A.2d 827 (1993), *appeal denied*, 537 Pa. 639, 644 A.2d 162 (1994); this court's opinion in *Commonwealth v. French*, 396 Pa.Super. 436, 578 A.2d 1292 (1990), *affirmed*, 531 Pa. 42, 611 A.2d 175 (1992); and *Commonwealth v. Kyle*, 367 Pa.Super. 484, 533 A.2d 120 (1987), *appeal denied*, 518 Pa. 617, 541 A.2d 744 (1988).

█ ¶ 15 "Ordinarily, 'a criminal defendant's confrontation and compulsory process rights under the Pennsylvania Constitution must yield to [an absolute statutory privilege.]' " *Commonwealth v. Askew*, 446 Pa.Super. 301, 666 A.2d 1062, 1065 (1995), *appeal denied*, 546 Pa. 635, 683 A.2d 876 (1996), quoting *Commonwealth v. Gibbs*, 434 Pa.Super. 280, 642 A.2d 1132, 1134 (1994). " 'The rationale underlying this conclusion is that the legislature, by enacting that provision, has ac-

---

9. We recognize that on appeal, appellee has not argued that his compulsory process and confrontation clause rights are implicated; however, he did raise these arguments before the trial court. (Appellee's brief, Exhibit A at 5–6.) Additionally, on appeal, appellee has

cited to *French, supra, Lloyd, supra,* and *Commonwealth v. Shands*, 338 Pa.Super. 296, 487 A.2d 973 (1985), all of which are grounded in at least one of these constitutionally protected rights under the federal or state constitution.

knowledged the significance of the interest which it addresses and decided to afford that interest protection.' " *Askew*, 666 A.2d at 1062, quoting *Gibbs*, 642 A.2d at 1134 (other citations omitted). Nevertheless, "evidentiary privileges are not favored. '[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.' " *Commonwealth v. Stewart*, 547 Pa. 277, 282, 690 A.2d 195, 197 (1997), quoting *Hutchison v. Luddy*, 414 Pa.Super. 138, 606 A.2d 905, 908 (1992) (other citations omitted).

¶ 16 As the Attorney General concedes, "In the instant case, unlike *Ritchie* and *Kyle*, no statutory privilege applies." (Appellant's brief at 19.) Additionally, no Rule of Criminal Procedure applies as was the case in *Carter*, *supra* and *Ross*, *supra*.[10] Assuming any privilege applies to the officers' personnel files, therefore, it is at most a common law privilege. In *Herrick*, *supra*, this court set forth the schematic we are to use when assessing a defendant's right of access to privileged materials. After setting forth the degree of access applicable to absolute and qualified statutory privileges, the *Herrick* court observed, " 'privileges which are not statutorily enacted, but rather are recognized by the common law, must yield to the constitutional rights of a criminal defendant.' " *Herrick*, 660 A.2d at 61, quoting *Commonwealth v. Eck*, 413 Pa.Super. 538, 605 A.2d 1248, 1252–1253 (1992).

¶ 17 The Attorney General argues, however, that *Gartner*, *supra*, entitles a defendant to court inspection of investigatory files "only where there exists at least some reason to believe the inspection would lead to evidence helpful to the defense." *Gartner*, *supra* 475 Pa. at 525,

381 A.2d at 120. We agree that a defendant must be able to articulate a reasonable basis for his request; however, we also find that appellee in this case made such a showing by asserting at least one prior instance during which one of the officers may have lied. As this court recently opined, "The law is clear that a criminal defendant is entitled to know about any information that may affect the reliability of the witnesses against him." *Commonwealth v. Copeland*, 723 A.2d 1049, (Pa.Super.1998) (citation omitted).

¶ 18 We likewise agree with the Attorney General that under *French*, *supra*, a defendant is not entitled to wholesale inspection of investigatory files, which may contain material completely irrelevant to the defendant's defense. French, who was charged with assaulting a police officer, sought access to a police internal investigation ("IAD") file to determine if statements of police witnesses contained therein might be exculpatory. The trial court reviewed the file and concluded the statements were not exculpatory. This court found error, holding that French was entitled to the statements of police witnesses to the incident contained in the police department's internal investigation files, although the defendant was not entitled to wholesale inspection of the IAD file. *French*, 578 A.2d at 1301.

¶ 19 Appellee, who has articulated a reason to believe that the BNI officers' personnel files may contain exculpatory information, *Gartner*, *supra*, is entitled to review material in the personnel files that may be relevant and material to his defense. *French*, *supra*. He is not, however, entitled to "wholesale inspection" of the personnel files, including material that is undeniably irrelevant.[11]

10. Rules granting privileges, enacted by the supreme court, have the same effect as statutes, except that rules cannot abrogate or alter legislatively conferred substantive rights. *Herrick*, 660 A.2d at 61.

11. To the extent that the Attorney General is arguing that *Gartner* stands for the proposition that a defendant is entitled *only* to *in camera* inspection of police investigatory files, we disagree. That issue was not before the *Gartner* court because Gartner only re-

¶ 20 The Attorney General asserts, however, that even if appellee is entitled to review information in the files, the review should be conducted by the court, not by appellee's counsel. Our supreme court in *French, supra,* affirming this court, responded to that assertion when it opined:

> [A] determination of whether the statements of the prosecution witnesses would have been helpful to the defense is not to be made by the prosecution or the trial court. 'Matters contained in a witness' statement may appear innocuous to some, but have great significance to counsel viewing the statements from the perspective of an advocate for the accused about to cross-examine a witness.'

*French, supra* 531 Pa. at 51, 611 A.2d at 179. *See also Miller, supra* 513 Pa. at 134, 518 A.2d at 1195 (finding "antithetical to the concept of due process as it has evolved in this Commonwealth under our Constitution" "[t]he concept of an *in camera* hearing during which the defendant and his counsel are excluded from an inquiry which may impact upon the ultimate finding of guilt or innocence. . . .").[12]

¶ 21 Our supreme court in *French, supra, Lloyd, supra,* and *Miller, supra,* has been unequivocal in its insistence that defense counsel be included in any review of potentially exculpatory, non-privileged information. We are bound by their determination. *See Dominick v. Statesman Ins. Co.,* 692 A.2d 188 (Pa.Super.1997)

(noting that because "this Court's formal purpose is to maintain and effectuate the decisional law of our supreme court as faithfully as possible, we are not authorized to create or adopt a new standard[ ]," citing *Commonwealth v. Dugger,* 506 Pa. 537, 545, 486 A.2d 382, 386 (1985)), *appeal denied,* 555 Pa. 701, 723 A.2d 671, No. 1998 Pa. Lexis 466 (1998).[13]

¶ 22 The Attorney General argues, however, that because there is no evidence that any investigation into the BNI officers' conduct resulted in disciplinary action, evidence of misconduct would not be admissible. (Appellant's brief at 20.) At this stage of the proceedings, this argument is premature. The question before us is not whether appellee ultimately will be permitted to cross-examine the BNI officers at a suppression hearing with their alleged prior bad acts in order to challenge the validity of the warrant; rather, it is whether appellee may attempt to discover evidence with which he might cross-examine the agents. *Maloney,* 241 F.Supp. at 50 (while a defendant has a right to have compulsory process to obtain witnesses in his favor, and therefore to have subpoenas issued, a determination whether to allow the witnesses to take the stand is a matter within the trial court's discretion, and is therefore premature).

¶ 23 Having determined that appellee's counsel is entitled to review any potentially exculpatory, non-privileged information contained in the BNI officers'

---

quested *in camera* inspection. *Gartner, supra* 475 Pa. at 523–25, 381 A.2d at 120.

12. *Ritchie* and *Herrick,* in which the courts held that *in camera* review satisfied a defendant's Sixth Amendment rights to confrontation and compulsory process, were decided on federal, not state, constitutional grounds. *Herrick,* 660 A.2d at 57, 62 n. 13. Similarly, *Shands* appears to have relied upon the federal, not the state, Constitution.

13. We agree with the Attorney General that this case is not controlled by *Shands, supra,* relied upon by the trial court, for two reasons. First, the issue before the *Shands* court was

whether the defendant was entitled to cross-examine the police officers who testified against him regarding disciplinary action taken against their police unit for testifying falsely in other cases. The *Shands* court concluded that the trial court erred when it precluded such cross-examination. *Shands,* 487 A.2d at 977. The *Shands* court also noted that Shands, who had requested the files on the investigation of the officers, was "at least entitled to a court inspection of [the] files[.]" *Id.* at 978. As appellee correctly notes, however, subsequent to this court's decision in *Shands,* the supreme court decided *Miller, supra,* and *French, supra.*

personnel files, we must next determine whether the subpoenas issued in this case were drafted precisely enough to reach only such information. A defendant's subpoena power is not unlimited. According to the Rules of Criminal Procedure, subpoenas in criminal cases are to be used not only for trial but also at any other stage, including hearings in connection with pretrial motions. Pa.R.Crim.P. 9016, 42 Pa. C.S.A., Comment. Nevertheless, "[w]hen the subpoena is for the production of documents, records, or things, *these should be specified*." *Id.* (emphasis added). *See also American Car & Foundry Co. v. Alexandria Water Co.*, 221 Pa. 529, 534–36, 70 A. 867, 869 (1908) (trial court did not err when it confined the production of books and papers demanded in a subpoena *duces tecum* to those that might be material in the case); *Herrick*, 660 A.2d at 61 (right to exculpatory material does not mean that a defendant has unfettered access to files not in his possession, nor that he may search untrammeled through Commonwealth files in order to argue the relevance of material therein), citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 59–60, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).[14] As the Third Circuit Court of Appeals opined, "Among the defenses which may be presented in resisting a subpoena are the obvious constitutional defenses of unreasonable search and seizure, and self incrimination[.] But many nonconstitutional defenses are also available, including undue breadth[ ][and] improper inclusion of irrelevant information[.] ..." *In Re: Grand Jury Proceedings Jacqueline Scho-*

*field*, 486 F.2d 85, 91 (1973) (citations omitted).

¶ 24 In this case, appellee virtually concedes that he is only entitled to "pretrial discovery of *any complaints and/or investigations contained in the personnel or investigative files* of the police agents involved." (Appellee's brief at 11 (emphasis added).) The subpoenas at issue, however, demand access to the entire personnel files. (R.R. at 3a.) As already noted, the trial court refused to quash the subpoenas, instead requiring defense counsel to sign an agreement not to disclose confidential information contained in the files, such as the officers' addresses, family status, and employee benefits information. Because the personnel files contain such information, which is clearly immaterial to this case, we find that the trial court erred when it denied the Attorney General's motion to quash, or, in the alternative, when it did not limit the scope of the subpoenas to complaints and/or investigations into the officers' alleged past malfeasance. *See American Car & Foundry Co., supra.*[15] The fact that the parties and the court agreed during the various hearings that information regarding the officers' personal history and benefits was immaterial does not alter the fact that the subpoenas at issue provide appellee with access to this information. While no statutory privilege protects this information, we nevertheless recognize a strong public interest in protecting the privacy and safety of our law enforcement personnel by preventing

14. *Ritchie* was decided on federal constitutional grounds. A plurality of the *Ritchie* court found that the federal confrontation clause was a trial right, which did not attach pre-trial. As a result, the Court was required to address the issue before it using either a compulsory process or due process analysis. The Court chose the more familiar due process analysis to decide whether and to what extent Ritchie was entitled to review the CYS files of a child victim of sexual abuse. *Ritchie*, 480 U.S. at 56, 107 S.Ct. 989.

For our purposes, we note that the Supreme Court has treated the due process and compulsory process clauses as imposing basically the same constitutional standard. *LaFave, supra* § 24.3(e) at 1027–1028, discussing *U.S. v. Valenzuela–Bernal*, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).

15. We recognize that the Attorney General in this case did not file a petition for relief from the subpoenas, as did the plaintiff in *American Car & Foundry*. Nevertheless, in the motion to quash, the Attorney General challenges the subpoenas as overly burdensome and as seeking information that is neither relevant nor admissible. (R. at D–3, D–4.)

access to or the release of information concerning their families, home addresses or other information of a personal nature.

¶ 25 In its final issue, the Attorney General claims that the trial court's order of December 23, 1996, incorporated into its amended order of January 17, 1997, does not reflect the limitations the court placed on appellee's access to the personnel files during the hearing on October 28, 1996. (Appellant's brief at 22.) Because of our disposition of this appeal, we find this issue moot.

¶ 26 In summary, we find that appellee's counsel is entitled to review information in the BNI officers' personnel files regarding complaints and/or investigations into the officers' purported past malfeasance in swearing out affidavits of probable cause. We also find, however, that the subpoenas as issued are too broad and must therefore be quashed. We leave to the trial court's discretion the manner in which this information is retrieved from the files. Although *Miller, supra, Lloyd, supra,* and *French, supra* would preclude the trial court from making a preliminary determination as to the exculpability or value of the evidence as to appellee, nothing precludes an *in camera* review in order to separate properly subpoenaed material from otherwise personal and immaterial file information.

¶ 27 Based on the foregoing, we vacate the order denying the Attorney General's motion to quash the subpoenas at issue in this case, and remand for proceedings consistent with this opinion. Jurisdiction is relinquished.