J. S53037/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KHALIL G. WALKER SHABAZZ, | : | No. 868 EDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, February 12, 2016,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0008582-2013

BEFORE:  BENDER, P.J.E., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED OCTOBER 25, 2017**

Khalil G. Walker Shabazz appeals[1] from the February 12, 2016 aggregate judgment of sentence of 23½ to 47 years' imprisonment, followed by 10 years' probation, imposed after he was found guilty in a waiver trial of third-degree murder, possessing an instrument of crime ("PIC"), carrying a firearm without a license, and carrying a firearm on public streets or public property in Philadelphia.[2]  After careful review, we affirm.

---

[1] Appellant purports to appeal from the February 25, 2016 order denying his post-sentence motions.  In a criminal action, an appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions.  **See Commonwealth v. W.H.M., Jr.**, 932 A.2d 155, 158 n.1 (Pa.Super. 2007) (noting that an appeal from an order denying post-sentence motions is procedurally improper because a direct appeal in a criminal proceeding lies from judgment of sentence).

[2] 18 Pa.C.S.A. §§ 2502, 907, 6106, and 6108, respectively.

The trial court summarized the relevant facts of this case as follows:

Jerry Edwards, [appellant], and several friends were out at Fat Pete's Bar in Philadelphia on the night of October 2, 2012. Edwards had arrived in his mother's Dodge Stratus. [Appellant] had Naseem Abdullah's Ford Crown Victoria. A little after midnight, Edwards left the bar driving the Crown Vic, leaving the keys to his mom's Dodge Stratus with [appellant]. Edwards got into an accident at Bridge and Pratt Streets, totaling the Ford. Edwards called one of his friends at the bar, Jawara Jones, and asked him to come to the accident scene and drive his female passengers home. Jones complied and then drove Edwards to Markeya Burton's residence in the Frankford section of Philadelphia. Edwards gave Jones the keys and title to the smashed up automobile which had been in the Ford's glove compartment.

Jones returned to the bar to pick up [appellant], telling him the tale concocted by Edwards that the Crown Vic had been confiscated by the police and giving [appellant] the title and keys to the Ford. [Appellant] became irate, not believing the fabricated story. [Appellant] and Jones argued in front of [appellant's] house, after which [appellant] took the keys to the Dodge Stratus and went inside his house. Jones walked home.

Around 4:00 a.m., Edwards left Burton's residence stating that he was going to get the Crown Victoria. He was picked up by [appellant] and [appellant's] brother, Sameer, and they drove around looking for the purportedly confiscated Ford. Sameer became suspicious after a short time and asked Edwards, who was driving at the time, to pull over. At that point, [Edwards] stopped the car and Sameer got out. After a verbal exchange, [appellant] pulled out a .40 caliber handgun and fired three shots at Edwards, killing him.

[Appellant] and his brother Sameer arrived at Abdullah's house early that morning. [Appellant]

admitted that he had met up with Edwards earlier, gotten into an argument, and shot him three times. Sameer confessed he had been in the car with Edwards and his brother, but had exited the vehicle and started walking up the block when his brother shot Jerry Edwards. Edwards' body was found in his mother's Dodge Stratus in the alley behind 7519 Brous Street in Philadelphia.

A resident of the area, Sean McCloskey, testified that he was getting dressed for work when he heard several gunshots, looked out his window and observed [appellant] jogging with one hand in his pocket. McCloskey had never seen [appellant] running in that area before. The title to the Ford Crown Victoria was found on a Nesper Street lawn, where McCloskey had seen [appellant] jogging. Additionally, both Jones and Abdullah testified that they knew [appellant] had a .40 caliber handgun, having purchased it a couple of months previous to this incident.

Trial court opinion, 8/4/16 at 2-4 (citations to notes of testimony omitted).

On April 19, 2013, appellant was arrested in connection with this incident and charged with third-degree murder and related offenses. On February 18, 2015, appellant filed a pre-trial motion for discovery of the personal and disciplinary files of former Philadelphia Homicide Detective Ronald Dove.[3] Following a hearing, the trial court denied appellant's motion

---

[3] The record reflects that Detective Dove was terminated from the Philadelphia Police Department after he was arrested for helping his girlfriend flee the city after she murdered her ex-boyfriend and trying to influence homicide detectives in their investigation of that murder. Detective Dove's connection to the instant matter was that he was involved in the preparation and execution of two search warrants and was present when two witnesses gave statements to other detectives. (**See** "Motion to Produce and Disclose Records," 2/18/15 at ¶¶ 2-4; certified record at no. 9; **see also** notes of testimony, 3/4/15 at 5, 8-9.)

on March 4, 2015. On November 9, 2015, appellant waived his right to a jury and proceeded to a bench trial the following day. On November 16, 2015, the trial court found appellant guilty of third-degree murder, PIC, carrying a firearm without a license, and carrying a firearm on public streets or public property in Philadelphia. As noted, appellant was sentenced to an aggregate term of 23½ to 47 years' imprisonment, followed by 10 years' probation, on February 12, 2016. On February 22, 2016, appellant filed post-sentence motions challenging the weight of the evidence and for reconsideration of his sentence. The trial court denied appellant's post-sentence motions on February 25, 2016. This timely appeal followed on March 8, 2016.[4]

Appellant raises the following issues for our review:

1. Did the trial court err when it denied [appellant's] request for Detective Dove's personnel and internal affairs files where it was undisputed that the detective had been caught falsely manipulating evidence in prior homicide cases?

2. Did the sentencing court impose an aggregated sentence that was contrary to the fundamental norms underlying the sentencing process because it did not take into account [appellant's] potential and need for rehabilitation?

---

[4] On March 10, 2016, the trial court ordered appellant to file a concise statement of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(b), within 21 days. On April 13, 2016, the trial court granted appellant's request for an extension of time to file his Rule 1925(b) statement. On May 11, 2016, appellant filed a timely Rule 1925(b) statement. The trial court filed its Rule 1925(a) opinion on August 4, 2016.

      3.     Was [appellant's] sentence for carrying a firearm without a license manifestly excessive because it exceeded the sentencing guidelines without any reasons articulated in support of exceeding the guidelines?

Appellant's brief at 4.

Appellant first argues that the trial court abused its discretion in denying his pre-trial discovery motion for the personal and disciplinary files of Detective Dove. (*Id.* at 10.) In support of this contention, appellant avers that "information relative to Detective Dove's dishonesty in other homicide investigations would have been materially exculpatory information that would have been appropriate impeachment material." (*Id.*) For the following reasons, we disagree.

Generally, our standard of review of a trial court's denial of a pre-trial discovery motion is whether the trial court abused its discretion. *Commonwealth v. Garcia*, 72 A.3d 681, 684 (Pa.Super. 2013). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa.Super. 2013), *appeal denied*, 87 A.3d 319 (Pa. 2014).

Pretrial discovery and inspection is governed by Pennsylvania Rule of Criminal Procedure 573, which provides, in relevant part, as follows:

**(B) Disclosure by the Commonwealth.**

. . . .

(2) **Discretionary With the Court.**

(a) In all court cases, except as otherwise provided in Rules 230 (Disclosure of Testimony Before Investigating Grand Jury) and 556.10 (Secrecy; Disclosure), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(i) the names and addresses of eyewitnesses;

(ii) all written or recorded statements, and substantially verbatim oral statements, of eyewitnesses the Commonwealth intends to call at trial;

(iii) all written and recorded statements, and substantially verbatim oral statements, made by co-defendants, and by co-conspirators or accomplices, whether such individuals have been charged or not; and

(iv) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

Pa.R.Crim.P. 573(B)(2)(a). Under Rule 573(B)(2)(a), appellant has "the burden of proving (1) his request for the [documents at issue] was material to the preparation of his defense, (2) the request was reasonable, and (3) the information disclosed by the request would be in the interests of justice." *Garcia*, 72 A.3d at 684.

Here, the trial court found that the discovery of the personnel and disciplinary files of Detective Dove was not warranted under Rule 573(B) because appellant failed to demonstrate "a specific articulable . . . reasonable basis" for his discovery request. (Notes of testimony, 3/4/15 at 13.) In reaching this decision, the trial court reasoned as follows:

> [A] mere general request because [Detective Dove] is indicted and in trouble, screwed up another investigation, is not enough.
>
> Unless you can tie it into the two statements or two search and seizure affidavits, I don't think you are entitled to it unless you can show there is some inclination to show there is some falsehood or something that will go on relevant to this case, not just in general an allegation that he screwed up other cases.

*Id.* at 7.

Upon review, we agree with the trial court that appellant failed to satisfy his burden under Rule 573(B)(2)(a), and thus, the denial of his discovery motion was entirely warranted. This court has repeatedly recognized that in order to prove "the requested information is material and reasonable, a defendant must show a reasonable probability that the

information gained from the discovery would lead to evidence that would exonerate him. **More than a mere assertion that the information disclosed might be helpful is necessary**." **Garcia**, 72 A.3d at 684 (internal citations omitted; emphasis added); **see also Commonwealth v. Belenky**, 777 A.2d 483, 488 (Pa.Super. 2001).

Instantly, our review of the record reveals that appellant failed to establish that his discovery request was either material to the preparation of his defense or a reasonable request. **See** Pa.R.Crim.P. 573(B)(2)(a)(iv). It necessarily follows as well that such disclosure would not be in the interests of justice. **See id.** As noted, Detective Dove's only connection to this case was that he was involved in the preparation and execution of two search warrants and was present when two witnesses gave statements to other detectives. (**See** notes of testimony, 3/4/15 at 5, 8-9.) Appellant's counsel conceded at the March 4, 2015 hearing that the two warrants Detective Dove executed in this case did not lead to the discovery of "anything of value." (**Id.** at 5.) Additionally, appellant presented no evidence that Detective Dove acted improperly with respect to the case **sub judice**, and the only conceivable purpose in presenting Detective Dove's alleged "prior malfeasance" in an unrelated matter would be to impeach his credibility. (**See** appellant's brief at 10.) The record, however, reveals that appellant was aware that the Commonwealth did not intend to call Dove as a witness, and Dove did not testify at trial. (Notes of

testimony, 3/4/15 at 6.) Thus, Dove's credibility was not at issue. Given Detective Dove's limited involvement in this case, as well as the absence of any significant connection between his girlfriend's case and the instant matter, we find that there was no reasonable basis to permit appellant to review Dove's personnel and disciplinary files. Accordingly, appellant's first claim fails.[5]

We now turn to appellant's challenges to the discretionary aspects of his sentence. Specifically, appellant argues that the trial court abused its discretion by sentencing him "without considering [his] rehabilitative needs." (Appellant's brief at 13.) Appellant further contends that the trial court

---

[5] In reaching this conclusion, we note that appellant's reliance on **Commonwealth v. Mejia-Arias**, 734 A.2d 870 (Pa.Super. 1999), is misplaced. **Mejia-Arias** stands for the proposition that a defendant is only entitled to review relevant material in a police officer's personnel file where there exists at least some reason to believe the inspection would lead to evidence helpful to the defense. **Id.** at 874-875. As recognized by the trial court,

> In that case, the District Attorney had **nol prossed** 53 cases in which the [sic] one of the officers was an essential witness and 60 cases involving the other agent, based on information that these agents had lied in search warrant applications. As these officers were the applicants on search warrants in **Mejia-Arias**, there was a significant, articulable, reasonable basis for allowing the defendant to review the agent's personnel files. No such basis has been provided in the present case. There has been no connection between this case and Dove's girlfriend's case.

Trial court opinion, 8/4/16 at 7-8.

failed to state sufficient reasons on the record for deviating from the sentencing guidelines with respect to the carrying a firearm without a license charge."[6] (*Id.* at 15.) We disagree.

Our standard of review in assessing whether a trial court has erred in fashioning a sentence is well settled.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, [a]ppellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa.Super. 2014) (citation omitted), *appeal denied*, 117 A.3d 297 (Pa. 2015).

Where an appellant challenges the discretionary aspects of his sentence, as is the case here, the right to appellate review is not absolute. *See Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super. 2011). Rather, an appellant challenging the discretionary aspects of his sentence must invoke this court's jurisdiction by satisfying the following four-part test:

---

[6] Under the sentencing guidelines, the standard range for the offense of carrying a firearm without a license was 12 to 24 months' imprisonment, plus or minus 12 months. The trial court sentenced appellant to 42 to 84 months' imprisonment, which was outside the aggravated range of the guidelines.

> (1) whether the appeal is timely; (2) whether appellant preserved his issue; (3) whether appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa.Super. 2013) (citations omitted).

Here, the record reveals that appellant filed a timely notice of appeal on March 8, 2016, and preserved his discretionary aspects of sentencing claim in a February 22, 2016 post-sentence motion. Appellant also included a statement in his brief that comports with the requirements of Pa.R.A.P. 2119(f). (*See* appellant's brief at 8-9.) Accordingly, we must determine whether appellant has raised a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa.Super. 2013), *appeal denied*, 76 A.3d 538 (Pa. 2013) (citation omitted). "A substantial question exists only when appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Glass*, 50 A.3d 720, 727 (Pa.Super. 2012), *appeal denied*, 63 A.3d 774 (Pa. 2013) (citation omitted).

In his Rule 2119(f) statement, appellant contends that the trial court deviated from the sentencing guidelines and "his potential for rehabilitation should have been acknowledged by the [trial] court and factored into his aggregate sentence. (Appellant's brief at 8.) Appellant further avers that the trial court failed "to offer any justification for its departure from the sentencing guidelines for the conviction of carrying a firearm without a license." (*Id.* at 9.) This court has long recognized that a claim "that the sentencing court disregarded rehabilitation and the nature and circumstances of the offense in handing down its sentence presents a substantial question for our review." *Commonwealth v. Dodge*, 77 A.3d 1263, 1273 (Pa.Super. 2013), *appeal denied*, 91 A.3d 161 (Pa. 2014). Likewise, "a claim the trial court failed to state its reasons for deviating from the guidelines presents a substantial question for review." *Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa.Super. 2009) (citation omitted). Accordingly, we proceed to consider the merits of appellant's discretionary sentencing claims.

Herein, the record reveals that the trial court considered and weighed numerous factors in fashioning appellant's sentence, including his rehabilitative needs. At the February 12, 2016 sentencing hearing, the trial court stated that it read "well over a hundred letters of recommendation" and heard testimony from multiple witnesses who testified on appellant's behalf. (Notes of testimony, 2/12/16 at 3, 8-17.) Appellant also briefly

testified at the sentencing hearing on his desire "to move forward in [his] life" and "be something in life." (***Id.*** at 30-31.)  Although the record reflects that the trial court did not specifically state at the sentencing hearing that it considered appellant's rehabilitation, the trial court was in possession of a presentence investigation ("PSI") report and indicated that it considered it in determining appellant's sentence.  (***Id.*** at 3; ***see also*** trial court opinion, 8/4/16 at 10.)  Where the trial court has the benefit of a PSI report, as is the case here, "we shall . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Antidormi***, 84 A.3d 736, 761 (Pa.Super. 2014) (citation omitted), ***appeal denied***, 95 A.3d 275 (Pa. 2014).

Contrary to appellant's contention, the record further reflects that the trial court placed its reasons on the record for its departure from the sentencing guidelines.  (***See*** notes of testimony, 2/12/16 at 31.)  It is well settled that a sentencing court "may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community[.]" ***Commonwealth v. Kitchen***, 162 A.3d 1140, 1147 (Pa.Super. 2017) (citation omitted).  However, "[i]n every case where a sentencing court imposes a sentence outside of the sentencing guidelines,

the court must provide in open court a contemporaneous statement of reasons in support of its sentence." ***Commonwealth v. Shull***, 148 A.3d 820, 835-836 (Pa.Super. 2016) (citations omitted). In reviewing the record, the appellate court considers:

> (1) the nature of the circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any pre-sentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

Instantly, the record reveals that the trial court was cognizant of both the sentencing guidelines and the sentence it was imposing. In addition to reviewing the PSI report, the trial court acknowledged on the record appellant's lack of prior criminal history and extensive support in his community, but reasoned that the sentence it imposed was just, given the fact that he could have been convicted of first-degree murder:

> [Appellant], although you have no prior history and you have a lot of support, what you did was a vicious, unprovoked, inhumane, hateful, cowardly act. There was absolutely no reason to take this young man's life, none.
>
> You were given mercy; you got third degree, not first.

Notes of testimony, 2/12/16 at 31.

Proper appellate review dictates that this court not disturb a trial court's sentence absent a finding that the trial court failed to weigh the sentencing considerations in a meaningful fashion. "When reviewing sentencing matters, this Court must accord the sentencing court great weight as it is in best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1134 (Pa.Super. 2009) (citation omitted), ***appeal denied***, 987 A.2d 161 (Pa. 2009). Accordingly, appellant's challenges to the discretionary aspects of his sentence must fail.

Based on the foregoing, we find no abuse of the trial court's discretion and affirm appellant's February 12, 2016 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/2017

- 15 -