J-A09022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC FARRAR | : | |
| | : | |
| Appellant | : | No. 1101 WDA 2019 |

Appeal from the Judgment of Sentence Entered June 10, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001825-2018

BEFORE:   SHOGAN, J., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 14, 2020**

Eric Farrar (Appellant) appeals from the judgment of sentence imposed after a jury found him guilty of two counts of aggravated assault and one count each of carrying a firearm without a license and possession of a controlled substance.[1]  We affirm.

On January 11, 2018, Pittsburgh Police Officers Gino Macioce and Dillon Lee Chong were patrolling in their marked police cruiser in the Homewood section of the City of Pittsburgh, when they heard nearby gunfire.  The officers drove closer to the location and exited their vehicle, in full uniform, to investigate on foot.  Officer Macioce saw Appellant walk from behind a fence, armed with a shotgun, which was pointed toward the ground.  Officer Macioce

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(6), 6106(a)(1); 35 P.S. § 780-113(a)(16).

identified himself as a police officer, pointed his service weapon at Appellant, and ordered him to drop the gun. In response, Appellant walked away from Officer Macioce, who again ordered Appellant to drop the gun. According to Officer Macioce, Appellant then looked over his shoulder, made a "drawing motion" toward the pocket of his hooded sweatshirt, and withdrew a handgun from the pocket. In response, Officer Macioce fired six shots at Appellant, hitting him several times. Officer Chong also fired four shots at Appellant. Appellant fell to the ground, and the officers placed him in handcuffs. The officers then transported Appellant, who also had narcotics on his person, to a local hospital for treatment. Appellant was subsequently charged with the above crimes.

Prior to trial, on July 9, 2018, Appellant served upon the City of Pittsburgh Police a subpoena *duces tecum* seeking disclosure of all "disciplinary records" for Officers Macioce and Chong.[2] The attorney for the City of Pittsburgh Police responded by filing a motion to quash the subpoena (motion to quash), asserting that Appellant's request was improperly overbroad and failed to advance any reasonable basis concerning his need for the purported documents. Appellant then filed a response to the motion to quash, asserting in relevant part:

> The disciplinary records of Officer [] Macioce are relevant because he has been involved in the shooting of three individuals between the dates of April 29, 2017 and February 11, 2018. Officer Macioce, according to the discovery provided by the

---

[2] Notably, Appellant did not elaborate as to the specific records he sought.

Commonwealth, shot [Appellant] numerous times on January 11, 2018[,] when [Appellant] allegedly reached for a firearm. [Appellant] is charged with aggravated assault of a police officer and Officer Macioce's disciplinary file is likely to contain information about the circumstances surrounding this shooting and the other shootings. That information is relevant to Officer Macioce's reliability, motive to lie, or intent. The disciplinary records of Officer … Chong are relevant because he was a recently hired officer that was involved in the shooting of [Appellant] on January 11, 2018. [Appellant] is charged with aggravated assault of a police officer and Officer … Chong's disciplinary record would likely contain information concerning this shooting. That information is relevant to Officer … Chong's reliability, motive to lie, or intent.

Response, 9/4/18, at 3 (unnumbered) (paragraph numbering and breaks omitted).

On September 12, 2018, the trial court issued an order (subpoena clarification order) informing Appellant that his subpoena request was overbroad, and the court was thus granting the motion to quash. However, the court also advised that Appellant was permitted to "make a more specific request for documents consistent with *Commonwealth v. Mejia-Arias*, 734 A.2d 870 (Pa. Super. 1999) and *Commonwealth v. Herrick*, 660 A.2d 51 (Pa. Super. 1995)." Notably, Appellant did not reply to the subpoena clarification order.

The matter proceeded to a jury trial, at which, among others, Officers Macioce, Chong, and Appellant testified. Appellant contested the officers' testimony, asserting that (1) he obeyed Officer Macioce's order to drop the shotgun; (2) when he began to turn around to face the officers, they shot him

several times; and (3) Appellant was not carrying a handgun in addition to the shotgun. Thereafter, the jury found Appellant guilty of all counts.

Prior to sentencing, the trial court ordered the preparation of a pre-sentence investigation report (PSI). On June 10, 2019, the trial court sentenced Appellant to an aggregate term of 44 to 88 months in prison, followed by 2 years of probation.[3] Appellant timely filed motion for modification of sentence, challenging the discretionary aspects of his sentence, which the trial court denied. Appellant then filed a timely notice of appeal, followed by a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) concise statement.

Appellant presents two issues for our review:

I. DID THE LOWER COURT ERR WHEN IT QUASHED A SUBPOENA ISSUED TO THE CITY OF PITTSBURGH POLICE DEPARTMENT FOR OFFICER GINO MACIOCE AND OFFICER DILLON LEE CHONG FOR PRODUCTION OF THEIR DISCIPLINARY RECORDS?

II. DID THE LOWER COURT ABUSE ITS SENTENCING DISCRETION BY SENTENCING [APPELLANT] TO CONSECUTIVE SENTENCES AT COUNTS 1, 2 AND 3, MAKING AN AGGREGATE SENTENCE OF 44 TO 88 MONTHS [OF] INCARCERATION?

Appellant's Brief at 6.

---

[3] Relevant to this appeal, the prosecutor pointed out at sentencing that Appellant had previously been convicted of another firearms offense, for which Appellant received a sentence of 18 months of probation. N.T., 6/10/19, at 4.

Appellant first argues that the trial court erred in quashing his subpoena seeking disclosure of the "disciplinary records" for officers Macioce and Chong. *See id.* at 20-29. In support, Appellant avers:

> [T]he records may have shown that the police were the aggressors in this case and had other allegations involving excessive use of force, brutality, or [] untruthfulness on the part of the officers involved. The value of police personnel files as impeachment or character evidence is clear.
>
> * * *
>
> For example, there might have been prior findings that either officer falsified reports, provided false testimony, stole money, or otherwise lied on the job[, all of which would be] … relevant to present to the jury in challenging either officer's credibility. This information was critical to [Appellant's] defense that he obeyed the police commands to drop his shotgun, and while walking away from the police, they used excessive force….

*Id.* at 21, 25.

Additionally, Appellant complains that the trial court erred in finding that his subpoena was overbroad, stating:

> [R]equiring additional specificity to meet the threshold requirements creates a Catch-22 – that the defendant requesting the materials must already know something about what the file contains – but the defendant will not know the specifics in the file until they see the file.

*Id.* at 26.

We begin with our standard of review:

> Whether a subpoena shall be enforced rests in the judicial discretion of the court. We will not disturb a discretionary ruling of a trial court unless the record demonstrates an abuse of the court's discretion. So long as there is evidence which supports the trial court's decision, it will be affirmed. We may not substitute our judgment of the evidence for that of the trial court.

- 5 -

An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

***Commonwealth v. Mucci***, 143 A.3d 399, 411-12 (Pa. Super. 2016) (citations omitted). "With regard to obtaining the personnel records of police officers, … a defendant must first articulate a reasonable basis for his request; a criminal defendant is not entitled to a 'wholesale inspection' of investigatory files." ***Id.*** at 412 (citation omitted).

Appellant cites ***Mejia-Arias***, ***supra***, where this Court reviewed the propriety of a trial court's refusal to quash the subpoena request of the defendant concerning personnel files of two officers who participated in defendant's arrest. ***Mejia-Arias***, 734 A.2d at 872. In holding that the trial court erred and the defendant's subpoena was overly broad, we explained:

> A defendant's subpoena power is not unlimited. According to the Rules of Criminal Procedure, subpoenas in criminal cases are to be used not only for trial but also at any other stage, including hearings in connection with pre-trial motions. Pa.R.Crim.P. 9016, 42 Pa.C.S.A., Comment. Nevertheless, "when the subpoena is for the production of documents, records, or things, ***these should be specified***." ***Id.*** (emphasis added). ***See also*** … ***Herrick***, 660 A.2d at 61 (right to exculpatory material does not mean that a defendant has unfettered access to files not in his possession, nor that he may search untrammeled through Commonwealth files in order to argue the relevance of material therein)[.]

***Mejia-Arias***, 734 A.2d at 878 (some citations omitted); ***see also id.*** ("recogniz[ing the] [] strong public interest in protecting the privacy and safety of our law enforcement personnel by preventing access to or the

- 6 -

release of information concerning their families, home addresses or other information of a personal nature.").

Moreover, the Pennsylvania Supreme Court has emphasized:

the strong public interest in protecting the privacy and safety of law enforcement officers[, which] requires a **narrowly targeted** and supported request for relevant documents. **A defendant has no right to obtain or review personnel records in the mere hope that he might uncover some collateral information with which to challenge the credibility of a police officer**.

***Commonwealth v. Blakeney***, 946 A.2d 645, 661 (Pa. 2008) (emphasis added).

Here, Appellant sought review of the purported disciplinary records of Officers Macioce and Chong "in the in the mere hope that he might uncover some collateral information with which to challenge the credibility of" the officers. ***Id.***; ***see also Mucci***, 143 A.3d at 412 (holding that "[a]ppellant was on a 'fishing expedition,' hoping to find something in the [police officers'] personnel and disciplinary files which might impeach the credibility of the officers involved in this case.").

Appellant arguably advanced a reasonable basis for his subpoena request concerning Officer Macioce, *i.e.*, in light of Appellant's allegation that Officer Macioce was involved in two prior incidents of use of physical force

against defendants.[4] However, the trial court found that Appellant's request for all of Officer Macioce's "disciplinary records" was improperly overbroad, and citing **Mejia-Arias** and **Herrick**, provided Appellant the opportunity to make a more specific request for documents. Order, 9/12/18. Significantly, Appellant did not do so. We thus discern no abuse of the court's discretion, **see Mucci**, **supra**, and agree with the trial court's rationale:

> Appellant's subpoena requested all disciplinary records for the two officers involved in this case, which may include areas of inquiry which would be unrelated to the matter at issue, but subject the officers to undue scrutiny and embarrassment. This [c]ourt fashioned its [subpoena clarification o]rder in such a manner as to permit Appellant to subpoena relevant records with sufficient specificity to survive a motion to quash. Rather than issuing a more specific subpoena, tying the request to relevant material, consistent with **Mejia-Arias**, Appellant chose to pursue the present appeal. This [c]ourt did not err in quashing the subpoena[.]

Trial Court Opinion, 9/20/19, at 4. Appellant's first issue does not merit relief.

In his second issue, Appellant contends the court abused its discretion by:

> (1) imposing a manifestly excessive and clearly unreasonable aggregate sentence;
>
> (2) failing to consider mitigating circumstances and Appellant's character/background; and

---

[4] Appellant did not raise a similar claim concerning Officer Chong. **See**, **e.g.**, Response, 9/4/18, **supra**. Appellant failed to advance a reasonable basis for his desire to engage in a "fishing expedition" for purported documents concerning Officer Chong. **See Herrick**, **supra** (emphasizing that a defendant may not "search untrammeled" through police files to argue their relevance).

(3) improperly relying on impermissible sentencing factors; namely, Appellant's prior conviction of a firearms offense. Therefore, the court "double-counted" a factor that was already considered in computing his prior record score.

Appellant's Brief at 15-19.

Appellant challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. *See Commonwealth v. Hill*, 66 A.3d 359, 363 (Pa. Super. 2013). Rather, where, as here, the appellant has preserved the sentencing challenge for appellate review, by raising it in a timely post-sentence motion, he or she must (1) include in their brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence, pursuant to Pa.R.A.P. 2119(f); and (2) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. *Hill*, 66 A.3d at 363-64.

Appellant has included a Rule 2119(f) statement in his brief, and his claims present a substantial question for our review. *See Commonwealth v. Watson*, 2020 PA Super 28 at *10 (Pa. Super. 2020) (claims that a sentencing court double-counted factors already considered in the sentencing guidelines raise a substantial question); *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (stating that "an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question.") (citation

omitted).[5]

In reviewing a challenge to the discretionary aspects of a sentence, we look for an abuse of discretion. ***See Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010).

> Pursuant to [42 Pa.C.S.A. §] 9721(b), "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." "[T]he court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." ***Id.*** Nevertheless, "[a] sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question…." ***Commonwealth v. Crump***, 2010 PA Super 101, 995 A.2d 1280, 1283 (Pa. Super. 2010)…. Rather, the record as a whole must reflect the sentencing court's consideration of the facts of the case and the defendant's character. ***Id.*** "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." ***Commonwealth v. Griffin***, 2002 PA Super 203, 804 A.2d 1, 10 (Pa. Super. 2002)….

***Commonwealth v. Watson***, 2020 PA Super 28 at *12. Further, although it is impermissible for a court to consider factors already included within the sentencing guidelines as the sole reason for increasing or decreasing a sentence, the court may use information included in the guidelines to supplement other peripheral sentencing information. ***Id.*** Finally, although

---

[5] To the extent Appellant contends that his aggregate sentence was excessive insofar as the sentencing court ordered the individual sentences to run consecutively, this claim does not present a substantial question. ***See Commonwealth v. Radecki***, 180 A.3d 441, 469 (Pa. Super. 2018).

Pennsylvania's system stands for individualized sentencing, a sentencing court is not required to impose the "minimum possible" confinement. **Radecki**, 180 A.3d at 470.

Initially, we observe that the sentencing court had the benefit of a PSI, and the court stated that it was in possession of same prior to imposing Appellant's sentence. **See** N.T., 6/10/19, at 2-3; **see also id.** at 2 (where the court asked defense counsel whether he had any additions or corrections to the PSI). Where a sentencing court is informed by a PSI, it is presumed that the court is aware of all appropriate sentencing factors and considerations (including any mitigating factors and the defendant's background), and "where the court has been so informed, its discretion should not be disturbed." **Commonwealth v. Ventura**, 975 A.2d 1128, 1135 (Pa. Super. 2009). The sentencing court also considered defense counsel's assertion that Appellant had completed a rehabilitative program while incarcerated. **See** N.T., 6/10/19, at 4. Accordingly, we find no merit to Appellant's claim that the sentencing court failed to consider mitigating circumstances and Appellant's character/background.

In addition, Appellant concedes that his sentence was in the standard range of the sentencing guidelines. Appellant's Brief at 34. It is well established that "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." **Moury**, 992 A.2d at 171. Further, although the sentencing

court did not engage in a lengthy discussion regarding its reasons for imposing the standard-range sentence, it is well-settled that a "sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has been informed by the [PSI]; thus properly considering and weighing all relevant factors." **Ventura**, 975 A.2d at 1135 (citation omitted); **see also Watson**, **supra** (emphasizing that a sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence).

Finally, contrary to Appellant's claim, the court did not improperly "double-count" his prior conviction for a firearms offense in sentencing him on the underlying convictions. Rather, it merely observed that despite the fact that Appellant had previously received a probationary sentence, that sentence did not deter him from committing firearm-related crimes. **See Watson**, 2020 PA Super 28 at \*12 (explaining that "courts can consider a defendant's prior convictions in conjunction with past unsuccessful attempts to rehabilitate, … or that the defendant's ongoing criminal record demonstrated a threat to public safety …, even though the guidelines take into account those prior convictions.").

In sum, we discern no abuse of discretion by the court, and therefore, we affirm the trial court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/14/2020