665 A.2d 813

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Harry Walt McELROY.**

Superior Court of Pennsylvania.

Argued April 24, 1995.

Filed Sept. 1, 1995.

Joseph A. Massa, Jr., District Attorney, Warren, for Commonwealth, appellant.

William P. Weichler, Erie, for appellee.

Michael S. Sherman, Philadelphia, Amicus Curiae.

Before KELLY, FORD, ELLIOTT and BROSKY, JJ.

BROSKY, Judge.

The Commonwealth of Pennsylvania files this appeal from the Order of the court of common pleas which granted (1) the Motion of appellee to enforce plea agreement and (2) appellee's Motion for sanctions.[1] In granting the latter Mo-

1. We deem the Order from which this appeal is taken to be akin to an Order of suppression because the trial court ordered exclusion of the trial testimony of all Commonwealth witnesses to the events in question

tion, the trial court ordered exclusion of the testimony of all witnesses who were to be called by the Commonwealth at trial whose tape recorded interviews by Sgt. McFadden of the Pennsylvania State Police ("the PSP") were erased or destroyed.

The Commonwealth raises two issues, to-wit: (1) Whether the offer of a negotiated guilty plea which appellee accepted is enforceable where appellee had not detrimentally relied upon it and where the trial court had not yet accepted the plea; and (2) Whether the trial court abused its discretion in imposing sanctions against the Commonwealth by barring witnesses' trial testimony when counsel for the PSP did not provide to either the Commonwealth or to appellee copies of reports of an internal investigation conducted by the PSP Bureau of Professional Responsibility ("the BPR").[2]

We hold that the offer of the negotiated plea which had not yet been accepted by the trial court is not enforceable against the Commonwealth and that the trial court abused its discretion by imposing the sanction of excluding testimony of witnesses whom the Commonwealth would call at trial and whose interviews had been tape recorded but destroyed or erased. We therefore vacate the Order in question. Our reasoning follows.

whose tape recorded interviews with Sgt. McFadden of the Pennsylvania State Police Bureau of Professional Responsibility were subsequently erased or destroyed. The Commonwealth has made a good faith certification that the Order in question terminates or substantially handicaps the prosecution of its case. *See Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985). It is an uncontestable certification which, in and of itself, precipitates and authorizes the instant appeal. *Id.*

2. The Commonwealth has misworded its second issue. The Commonwealth did, in fact, provide appellee with a copy of Sgt. McFadden's BPR report. The Order which is the subject of the instant appeal sanctions the District Attorney, rather than counsel for the PSP, for failing to provide or to disclose the existence, prior to their destruction, of the tape recordings of witness interviews conducted by Sgt. McFadden during the course of his BPR investigation of PSP Tpr. Thornton. In the Argument section of its Brief on this issue, the Commonwealth does focus upon the tape recordings and the impact of the Order in question upon the District Attorney rather than upon counsel for the PSP.

Appellee was charged in a five count criminal information with three violations of the Motor Vehicle Code, to-wit: Overtaking vehicle on left (75 Pa.C.S.A. § 3303(a)(2)), reckless driving (75 Pa.C.S.A. § 3736) and driving while operator's privilege is suspended or revoked (75 Pa.C.S.A. § 1543(a)). He was also charged with two violations of the Crimes Code, to-wit: two counts of reckless endangerment (18 Pa.C.S.A. § 2705). Count one, reckless endangerment, charged appellee with colliding head-on with a vehicle driven by PSP Tpr. Thornton which caused the death of the victim, James Rehe. Count five, reckless endangerment, charged appellee with colliding head-on with Tpr. Thornton's vehicle while driving at an excessive rate of speed, making illegal passes and increasing speed while being overtaken by the Trooper's vehicle.

The genesis of these criminal charges was a high-speed chase by Tpr. Kenneth Thornton, who was attempting to stop appellee on S.R. 62 in Warren County. During the course of the chase, Tpr. Thornton's north-bound vehicle collided with the south-bound vehicle driven by James Rehe. This collision resulted in the death of Mr. Rehe. Following the commencement of formal charges against appellee, Mr. Massa, the District Attorney of Warren County, proposed to appellee's counsel, Mr. Ambrose, through informal discussions, that appellee plead *nolo contendere* to Count five, reckless endangerment, in exchange for *nolle prosing* Counts one through four. Approximately two months following this offer, appellee, through Mr. Ambrose, informed Mr. Massa that he would accept the offer to plead *nolo contendere* to Count Five in exchange for the *nolle prosing* of Counts one through four. This was confirmed by letter from Mr. Ambrose to Mr. Massa. The effect of this offer was that appellee would plead *nolo contendere* to Count Five, which charged reckless endangerment to Tpr. Thornton. Count one, which charged reckless endangerment to Mr. Rehe, would be *nolle prossed.*

Subsequently, Mr. Massa met with Mr. Smith, counsel for the Rehe family, and the members of the Rehe family to discuss the proposed plea negotiations. The Rehe family objected to this proposal. The family members were outraged

because the proposed plea would permit appellee to escape direct responsibility for the death of Mr. Rehe. The Estate of Mr. Rehe had previously commenced a wrongful death action against appellee, Tpr. Thornton and appellee's trucking company, whose vehicle appellee was operating at the time in question. After this meeting, Mr. Massa informed Mr. Ambrose that Mr. Rehe's family objected to the proposed plea and that, therefore, the offer would be withdrawn. According to the Opinion of the trial court written in support of its Order granting appellee's Motion to enforce plea agreement and his Motion for sanctions, Mr. Smith appeared while Mr. Massa and Mr. Ambrose were attempting new plea negotiations for the approval of the court and objected to any plea offer being made and accepted because the Rehe family had been informed by Mr. Massa that no plea agreement would be made. As a result, the trial court deferred further action on this matter.

Appellee and the trial court maintain that because the proposed plea agreement had been offered to and had been accepted by appellee, the Commonwealth could not renege because the plea offer had not been conditioned upon the approval of the Rehe family. This is not the law. Pennsylvania Rule of Criminal Procedure 319(b) provides:

**(b) Plea Agreements.**

(1) The trial judge shall not participate in the plea negotiations preceding an agreement.

(2) When counsel for both sides have arrived at a plea agreement[,] they shall state on the record in open court, in the presence of the defendant, the terms of the agreement. Thereupon *the judge shall conduct an inquiry of the defendant on the record* to determine whether he understands and concurs in the agreement.

(Emphasis supplied).

This Rule has been interpreted by our supreme court to mean that no plea agreement exists unless and until it is presented to the court. *Commonwealth v. Porreca*, 528 Pa. 46, 595 A.2d 23 (1989). Our supreme court has also held that

"[w]here a plea agreement has been *entered of record* and has been *accepted* by the trial court, the [Commonwealth] is required to abide by the terms of the plea agreement." *Commonwealth v. Spence,* 534 Pa. 233, 627 A.2d 1176 (1993) (rehearing denied). (Emphasis supplied). The *Spence* court further cautioned: "However, prior to the *entry* of a guilty plea, the defendant has no right to specific performance of an 'executory' agreement." At 249, 627 A.2d at 1184. (Emphasis supplied). In the matter at bar, appellee's "plea agreement had neither been entered of record nor accepted by the trial court and was, therefore, not enforceable." *Id.* It was, at most, executory. Therefore, appellee is not "entitled to specific performance of the oral plea agreement." *Id.* Although the issue in *Commonwealth v. Stafford,* 272 Pa.Super. 505, 416 A.2d 570 (1979), was the district attorney's refusal to plea bargain with the appellant, the basis for this court's rejection of the appellant's Fourteenth Amendment equal protection claim there is equally applicable to the matter at bar:

> The Commonwealth is never under any legal obligation to plea bargain with any defendant. Stated another way[,] a defendant has no constitutional right to a plea bargain arrangement.... The decision as to whether to enter into plea negotiations is a function of prosecutorial discretion[,] and we will not review such decisions unless such decisions are based upon an invidious classification such as race, religion or national origin.... No such claim is made here.

At 511, 416 A.2d at 573. (Citation omitted).

▇ This follows from the well-recognized principle that "'[a] District Attorney has a general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case.'" *Commonwealth v. Stipetich,* 539 Pa. 428, 432, 652 A.2d 1294, 1295 (1995), *(quoting Commonwealth v. DiPasquale,* 431 Pa. 536, 540–41, 246 A.2d 430, 432 (1968), and listing case law, statutes and rules of court setting forth various powers of a district attorney). *See also, e.g., Commonwealth v. DeHart,* 512 Pa. 235, 516 A.2d 656 (1986) (prosecutorial

discretion with respect to determining death penalty cases), *Commonwealth v. Buonopane,* 410 Pa.Super. 215, 599 A.2d 681 (1991), *allocatur denied,* 530 Pa. 651, 608 A.2d 27 (1992) (same), and *Commonwealth v. Paul,* 383 Pa.Super. 486, 557 A.2d 357 (1989) (prosecutorial discretion to submit case to ARD program absent invidiously discriminatory factors unrelated to the protection of society).

The District Attorney is a publicly elected official. Pa. Const. art. 9, sec. 4. As such, s/he is responsible to the people of this Commonwealth. A district attorney may decide, as a function of her/his prosecutorial discretion, that a plea bargain agreement not yet entered of record and approved by the court is not in the best interests and/or for the general welfare of the citizens of this Commonwealth. In that case, it makes little sense, and, indeed, it would violate the trust imposed in that office, to abdicate or to force abdication of prosecutorial discretion to a criminal defendant whose interests are adverse to those of the general citizenry of this Commonwealth.

No claim is made that Mr. Messa's decision to withdraw the plea offer was "based upon an invidious classification such as race, religion or national origin", *Commonwealth v. Stafford, supra,* or upon other factors unrelated to the protection of society. *Commonwealth v. Paul, supra.* The plea offer was at no time entered of record or accepted by the trial court. *Commonwealth v. Spence, supra; Commonwealth v. Porreca, supra.* Therefore, appellee is not entitled to receive the benefit of what is, at most, an executory bargain.

As its second issue, the Commonwealth maintains that the trial court abused its discretion in imposing sanctions against it. The sanction imposed was the barring of the testimony at trial of Commonwealth's witnesses whose interviews with Sgt. McFadden and Cprl. Patterson, the criminal investigator of Tpr. Thornton, were tape recorded by Sgt. McFadden. The basis for this sanction was the Commonwealth's alleged failure to comply with discovery orders to provide the tape recorded statements of these witnesses prior to the destruction or erasure of these tape recordings.

As a result of the death of Mr. Rehe, the PSP launched an internal investigation of Tpr. Thornton through its BPR. Sgt. McFadden was the personnel assigned to conduct the BPR investigation. He tape recorded the witnesses' statements for the purpose of that investigation. Cprl. Patterson, on the other hand, was assigned the responsibility for conducting the criminal investigation. He interviewed the same witnesses with Sgt. McFadden but did not tape record their statements. Instead, he made notes of the interviews.

Pursuant to appellee's request for discovery, the trial court ordered the PSP and Mr. Massa to produce all evidence, including the tape recorded interviews, of the BPR investigation of Tpr. Thornton. However, counsel for the Commissioner of the PSP prepared a declaration signed by Sgt. McFadden that the latter had destroyed the tapes after the preparation of the BPR report and the submission of that report to his superiors. The Commissioner of the PSP also filed a Motion to reconsider the trial court's earlier discovery order to turn over to appellee the tape recordings of the witnesses' interviews with Sgt. McFadden. This Motion was denied and resulted in the imposition of sanctions against the Commonwealth by precluding the trial testimony of the witnesses whose interviews were tape recorded by Sgt. McFadden in the course of his BPR investigation.

The Commonwealth's principal argument is that it had no control over or possession of any materials relating to the BPR investigation of Tpr. Thornton to disclose in connection with its prosecution of appellee. The Commonwealth maintains that, under the circumstances, it was unable to comply with the trial court's orders to turn over the tape recordings. Sgt. McFadden testified at the hearing held on appellee's Motion for sanctions that the tapes had been destroyed in March 1993, which was prior to appellee's discovery request. Appellee admits in his Brief to this court that he was furnished a copy of Sgt. McFadden's BPR report. *See* pp. 8, 28.

The Commonwealth's second argument is that since the tape recordings of Sgt. McFadden's interview of witnesses pursuant to the BPR investigation were not within its control

or possession, the appropriate procedure for appellee to follow was to serve upon the Commissioner of the PSP a subpoena *duces tecum* for the production of all reports and tape recordings. Therefore, the Commonwealth concludes, the trial court abused its discretion in imposing sanctions against it.

We first address the position of the Commonwealth that appellee failed to avail himself of the procedure of serving the Commissioner of the PSP with a subpoena *duces tecum* for the production of the tape recordings. In *Commonwealth v. Friday*, 171 Pa.Super. 397, 90 A.2d 856 (1952), this court ruled that records of the PSP relating to a criminal investigation of an accused who wished to inspect these records could not be disclosed through the testimony of a subordinate PSP officer at trial. The proper mode of procedure, we stated, was the service of a subpoena *duces tecum* upon the Commissioner of the PSP as the legal custodian of records, assuming the availability of the same. Our decision in *Friday* is relevant because it recognizes the role of the Commissioner as the legal custodian of the records of the PSP and holds that a criminal defendant may obtain evidence which s/he deems material and which cannot be obtained through other avenues by service of a subpoena *duces tecum* upon the custodian of the record or other evidence sought.

Nothing precluded appellee from employing the procedure of serving a subpoena *duces tecum* upon the Commissioner of the PSP for the tape recordings, assuming their availability, after appellee's counsel, in the course of conducting an independent investigation of this matter, interviewed the witnesses who gave the tape recorded statements and who revealed to him the existence of these tape recordings. *See* Appellee's Brief, pp. 7, 22, n. 2. Appellee avers that some of the witnesses advised him that the tape recordings represented the witnesses' best recollection of the events in question. *Id.*

The Commonwealth's primary contention on appeal is that it had no possession of or control over the tape recordings of the witnesses' statements made pursuant to Sgt. McFadden's BPR investigation of Tpr. Thornton. Pennsylvania Rule of

Criminal Procedure 305B.(1) mandates the Commonwealth to disclose the following to an accused:

(a) Any evidence favorable to the accused which is material either to guilt or to punishment, *and which is within the possession or control of the attorney for the Commonwealth* [.]

(Emphasis supplied). Pennsylvania Rule of Criminal Procedure 305B.(2) permits the defense, at the discretion of the court, to obtain discovery of the following evidence "upon a showing that [it is] material to the preparation of the defense[ ] *and* that the request is *reasonable:* "

(b) all written or recorded statements, and substantially verbatim oral statements, of eyewitnesses the Commonwealth intends to call at trial.

(Emphasis supplied).

■■■ Appellee relies upon the latter section of the Rule in an apparent attempt to avoid the necessity of showing that or how the tape recordings in question were in the possession or control of the District Attorney pursuant to Rule 305B.(1)(a), *supra.* Appellee's strategy, albeit clever, fails because we interpret the requirement of reasonableness under Rule 305B.(2) to mean that the material sought must also be within the control or possession of the Commonwealth. It makes little sense to order the Commonwealth to make available information or documents pursuant to Rule 305B.(2) when such is not within the Commonwealth's realm of accessibility. Thus, under either section of the Rule, an accused's request for discovery must first be within the control or possession of the Commonwealth.[3]

Appellee cites *Commonwealth v. Redmond,* 395 Pa.Super. 286, 577 A.2d 547, *appeal dismissed,* 528 Pa. 601, 600 A.2d 190 (1990), to bolster his position that evidence which is not in the

---

**3.** Note the conjunctive language of both sections of the Rule, *supra in text* at p. 11. Thus, with respect to Rule 305 B.(1)(a), a showing of materiality is without effect if the evidence sought to be produced is not within the possession or control of the Commonwealth. Similarly is this showing without significance if the request for evidence is not reasonable pursuant to Section B.(2).

possession of the District Attorney is, nevertheless, within the control of the Commonwealth's Attorney if it is referenced in police reports. In *Redmond,* the Commonwealth was ordered to divulge, in response to a request for discovery, the name of an informant to which he referred in his report. We held that while the name of the informant was not within the possession of the District Attorney, nevertheless, it was within his control because the investigating PSP officer was to be the chief witness for the prosecution.

*Redmond* is distinguishable from the case at bar. First, discovery was ordered of evidence which was gathered by an officer of the PSP during a *criminal* investigation of Redmond. Instantly, the evidence sought was the result of an *internal* investigation conducted by the BPR to determine if any disciplinary action was warranted against Tpr. Thornton. Secondly, the target of the officer's criminal investigation in *Redmond* was the appellee. In this case, the target of the internal investigation was another member of the PSP, not appellee. Thirdly, and most importantly, the investigating PSP officer in *Redmond* was to be the Commonwealth's chief witness at trial. In the matter at bar, it is the witnesses who gave the tape recorded interviews to Sgt. McFadden who are to testify for the Commonwealth at trial.

Appellee also cites *Kyles v. Whitley,* —— U.S. ——, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), which holds that a prosecutor is not excused under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), from disclosing evidence which is material and which is known to the police but not to the prosecutor. The evidence which was not disclosed in *Kyles* consisted of inconsistent statements made to the police by an alleged informant who claimed to have information regarding the robbery and murder of an elderly woman, the crimes for which Kyles was convicted. The State of Louisiana responded to Kyles' discovery request that no exculpatory information existed. Thus, the most important feature distinguishing *Kyles* was that the petitioner was presented with no discovery. In its argument to the supreme court, the State argued that at least some of the favorable evidence was not

known to it until after trial. From this, it seems apparent that the State knew of at least some favorable evidence before trial but that it intentionally, or at least negligently, did not make disclosure to Kyles.

Here, appellee was presented with a copy of Sgt. McFadden's report of the BPR investigation. The report contained information regarding the witnesses' interviews. Under the law of this Commonwealth, Pa.R.Crim.P. 305 is violated only when the prosecutor deliberately withholds material and favorable evidence. *See Commonwealth v. Montgomery*, 533 Pa. 491, 626 A.2d 109 (1993). Instantly, the District Attorney did not deliberately withhold information regarding the existence of the tape recorded interviews. Simply put, Mr. Massa had none to withhold, deliberately or otherwise.

Secondly, the material sought was gleaned as a result of a *criminal* investigation of Kyles' involvement in the murder/robbery. Thirdly, at trial, Kyles denied that he was involved in the murder/robbery at all. The defense at Kyles' trial was that of identification. Kyles wanted the jury to believe that the informant, rather than he, was the perpetrator of the crimes. Here, no issue of identification exists.

Instead, we believe that the decisions of this court in *Commonwealth v. Pickering*, 368 Pa.Super. 100, 533 A.2d 735 (1987), *appeal denied*, 522 Pa. 611, 563 A.2d 497 (1988), and *Commonwealth v. York*, 319 Pa.Super. 13, 465 A.2d 1028 (1983), control.

In *Commonwealth v. Pickering, supra,* an undercover police officer made notes of drug transactions between herself and the appellant. The officer used these notes to prepare her written reports which were made available to the appellant's counsel. After preparation of the reports, she destroyed the notes. The appellant contended on appeal that the Commonwealth's failure to produce the officer's notes denied him the right to confrontation under the sixth amendment to the United States Constitution and article I, section 9 of the Pennsylvania Constitution. The appellant argued that the notes were relevant and that, without them, he was unable to

effectively cross-examine the witness. This court, citing *Commonwealth v. York, supra,* stated that destruction of a police officer's notes violates a defendant's right to confrontation only if the Commonwealth suppressed the evidence *following* a request for discovery of same by the defense. We also held that where the notes were substantively incorporated into the police report, they would have been merely cumulative of that report had they been produced. *See also Commonwealth v. Haber,* 351 Pa.Super. 79, 505 A.2d 273 (1986) (same).

In *Commonwealth v. York, supra,* an undercover police officer tape recorded details of her drug transactions with the appellee immediately following each purchase. She used these recordings to prepare her police reports. Once the reports were prepared, she recorded over the prior recordings, thus erasing the latter. The officer testified at the appellee's preliminary hearing that she had used the tape recorded notes to prepare her police reports. Upon motion of the appellee, the trial court ordered that the officer's preliminary hearing testimony be suppressed because the "action of destroying [the officer's] tape recorded notes was a complete usurpation of a judicial function in deciding what is admissible and that defense counsel would be severely hindered in their cross examination of Commonwealth witnesses due to their inability to review [the officer's] tape recorded notes." At 319 Pa.Super. 17, 465 A.2d at 1030.

This court held that a *Brady* violation occurs when the evidence sought is not only material and favorable but where the Commonwealth also suppressed the evidence following a defense request for same. It concluded:

> In the instant matter there is no evidence that the prosecutor suppressed or destroyed the tapes. On the contrary, testimony from the suppression hearing reveals that [the officer] obliterated the tapes by using them for further recording.

*Id.* at 18, 465 A.2d at 1031. This court then stated that the Commonwealth never had the chance to see the tape recordings, much less to suppress them.

This is similar to what occurred instantly. At the hearing held on appellee's Motions to compel enforcement of the plea agreement and for sanctions, Sgt. McFadden testified that he had destroyed the tapes after he had prepared and submitted the BPR report to his superiors. He also testified that he had recorded over these tapes following the preparation of his report and that substance of the tape recorded statements had been incorporated into this report. It is apparent, then, that the District Attorney never had a chance to see or hear these tapes and, therefore, could not have suppressed them following appellee's request for their production. By that time, the tapes had already been recorded over.

Appellee argues: "These witnesses could have included recollections in their [tape] recorded statements that were not reflected in the police reports or their subsequent [trial] testimony." Appellee's Brief, p. 36. The response to this argument was well stated in *Commonwealth v. York, supra:*

> In the instant matter while we cannot approve the procedure by [the officer] which erased her recorded impressions, we do not agree that the action taken by the lower court was appropriate. Appellee's right or opportunity to cross-examine the witnesses is not so severely affected by the absence of the tapes as to warrant the harsh sanction of the witnesses' suppression. Appellee still has the chance to fully cross-examine the witness regarding her recollections of the events giving rise to the arrest. Appellee can scrutinize [the officer's] official report in any aspect, as to its contents and compilation, and explore the effect of the destruction of the tapes on the witnesses' credibility. The credibility of a witness is within the sole province of the finder of fact. . . .

*Id.* (Citation omitted).

 Having said all this, our holding on this issue may be summarized as follows: First, the tape recordings were not discoverable pursuant to Pa.R.Crim.P. 305. Therefore, appellee had the option of securing these tape recordings, assuming

their availability,[4] through the service of a subpoena *duces tecum* upon the Commissioner of the PSP as the legal custodian of PSP records. Where evidence is equally accessible to both the prosecution and the defense, the latter cannot employ Rule 305B. against the Commonwealth. *Commonwealth v. Gelormo,* 327 Pa.Super. 219, 475 A.2d 765 (1984). The converse is also true where evidence is equally inaccessible, *i.e.,* the defense cannot use Rule 305B. as a means to force the Commonwealth to produce evidence to which the Commonwealth has no access, either.

Secondly, because the tapes have been destroyed, neither appellee nor the trial court may use Pa.R.Crim.P. 305 as a tool to punish the Commonwealth for failing to provide the tape recordings and/or for the destruction of the tapes in question when such material failed to meet the requirements of the Rule 305B.(1)(a) and (2). Moreover, and as already noted elsewhere in this Opinion, Sections (1)(a) and (2) of the Rule are worded conjunctively.[5] Therefore, the materiality of and the favorability to appellee of the tape recordings in the case at bar are irrelevant if, as a threshold matter, they were not within the possession or control of the District Attorney or if the request therefor was unreasonable. The Commonwealth is only required to produce evidence which is relevant *and* which is within its possession. *See Commonwealth v. French,* 531 Pa. 42, 611 A.2d 175 (1992).

■ The trial court abused its discretion when it sanctioned the Commonwealth for failing to comply with its discovery order to produce the tape recordings of the witnesses'

4. Given the legislative scheme pertaining to the PSP (*see* Administrative Code of 1929 [71 P.S. §§ 51 *et seq.*], especially Sections 201 [71 P.S. § 61], 205 [71 P.S. § 65(a), (b) and (e) ], 710 [71 P.S. § 250(b), (c), (d) and (f) ] and 711 [71 P.S. § 251(a) and (b)(1) and (2) ] ), we are unable to understand, in any event, how the information sought—tape recordings of witnesses' interviews conducted as part of the BPR investigation of Tpr. Thornton—could be within the possession or control of the District Attorney of Warren County. In fact, investigative reports are not even subject to disclosure in PSP court martial proceedings conducted against any enlistee thereof. *Stouffer v. Commonwealth, Pennsylvania State Police,* 76 Pa.Commw. 397, 464 A.2d 595 (1983).

5. *See* p. 11, *supra,* and note 3, *supra* at p. 12.

interviews with Sgt. McFadden during the course of his BPR investigation of Tpr. Thornton.[6]

Order vacated. Jurisdiction relinquished.

6. Despite having received a copy of Sgt. McFadden's BPR report, appellee still maintains that the tape recordings are necessary because they represent what the witnesses actually said. Because of our holding that this material was not, as a threshold matter, within the possession or control of the Commonwealth and that the request therefor was also unreasonable (*see* Pa.R.Crim.P. 305 B.1(a) and (2)), we deem this argument moot.