J-S02045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT S. KARPEH | : | |
| | : | |
| Appellant | : | No. 1549 EDA 2017 |

Appeal from the PCRA Order May 4, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0005514-2012,
CP-51-CR-0005515-2012, CP-51-CR-0005516-2012

BEFORE:  GANTMAN, P.J.E., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.E.:                **FILED APRIL 04, 2019**

Appellant, Robert S. Karpeh, appeals from the order entered in the Philadelphia County Court of Common Pleas, which denied his first petition filed under the Post Conviction Relief Act ("PCRA"), at 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court set forth the relevant facts and procedural history as follows:

**Findings of Fact**

On April 20, 2012, at approximately 1:50 a.m., Philadelphia Police Officer Perez was patrolling the 6200 block of Woodland Avenue in Philadelphia when she was flagged down by a male civilian in reference to a black male in an orange shirt, the Appellant, causing a disturbance inside of Lynn's Bar located as 6206 Woodland Avenue.

Officer Perez notified police radio and requested backup. Officer Juszczyszyn arrived on location and went inside the

bar with Officer Perez where they located the male in the orange shirt. The officers informed the Appellant that he had to leave at the request of the bar employees. [Appellant] refused to leave. The officers then ordered the Appellant to leave and he continued to refuse. The Appellant then stood up and informed the officers that he needed his bag while pointing behind the officer.

Officer Juszczyszyn picked up the Appellant's bag and attempted to hand it to him. As Officer Juszczyszyn was attempting to hand the Appellant the bag, the Appellant slapped the officer's arm away. Officer Juszczyszyn and Perez then grabbed the Appellant by his wrist in an attempt to remove him from the bar, but the Appellant pulled away from Officer Perez as Officer Juszczyszyn was still holding onto the Appellant's other arm. At this point in time, the Appellant stepped backwards and he pulled Officer Juszczyszyn behind the bar and shoved Officer Juszczyszyn against the bar while holding the officer's arm up against the wall. Officer Perez then called for additional backup while attempting to get the Appellant off of Officer Juszczyszyn. Officer Perez then drew her asp and struck the Appellant several times in the leg attempting to free Officer Juszczyszyn from Appellant's grasp.

Some patrons of the bar came to the aid of the officers prior to additional units arriving on location. Officer Gerard, Officer DeJesus, and some other officers arrived on location and observed Officer Perez and Officer Juszczyszyn struggling with the Appellant. As the officers were arriving, Officer Juszczyszyn was able to push the Appellant off of him and back against the display of the liquor bottles. The Appellant then began grabbing liquor bottles and throwing them at the officers, striking Officer Perez and Officer Gerard. The Appellant also struck Officer Juszczyszyn over the head with a clear glass liquor bottle, causing a deep laceration that began to bleed heavily. Officer Gerard and DeJesus were able to pin the Appellant against the bar and attempted to handcuff him. The Appellant grabbed a hold of the bar while still struggling with the officers, making it difficult to place handcuffs on him. Officer Juszczyszyn then produced his taser and yelled, "Get back, taser," and began to attempt to dry shock the Appellant. As Officer Perez was holding onto the Appellant, she was exposed to the taser

shock. The officers were finally able to subdue the Appellant after ten minutes and take him into custody. After he was placed into custody, Officer DeJesus noticed that a taser prong had penetrated his right shoulder during the struggle. Officers Perez, Gerard, Juszczyszyn, and DeJesus all sustained injuries as a result of the [incident].

Officer Perez was treated at Temple University Hospital for a closed head trauma as a result of being struck with a bottle, in addition to paralyses and temporary nerve damage as a result of being tased while struggling with the Appellant. Officers Gerard and DeJesus were treated at HUP and were released. Officer Gerard sustained a one inch laceration to his upper lip which required stitches while Officer DeJesus had to have the taser prong surgically removed and then received stitches to close up the incision.

Officer Juszczyszyn was taken to HUP and was admitted in stable condition to be treated for injuries that he sustained to his head as a result of being struck with a bottle. Officer Juszczyszyn also sustained injuries to his left hand that required surgery. Most recently, Officer Juszczyszyn had nerve graph [surgery] on his hand.

**Procedural History**

On April 20, 2012, Appellant was arrested and charged with Aggravated Assault (18 Pa.C.S.A. § 2702(a)); Possession of an Instrument of Crime with Intent (18 Pa.C.S.A. § 907(a)); Simple Assault (18 Pa.C.S.A. § 2701(a)); Recklessly Endangering Another Person (18 Pa.C.S.A. § 2705); Resisting Arrest (18 Pa.C.S.A. § 5104); and Criminal Mischief (18 Pa.C.S.A. § 3304(a)(4)). Following a preliminary hearing on May 7, 2012, all charges were held for court. By information filed on May 18, 2012, Criminal Mischief (18 Pa.C.S.A. § 3304(a)(4)) was changed to Criminal Mischief—Tamper w/ Property (18 Pa.C.S.A. § 3304(a)(2)). On May 13, 2013, the Appellant entered into a non-negotiated guilty plea, which occurred before the Honorable Sean F. Kennedy. The Appellant pled guilty to three counts of Aggravated Assault ((18 Pa.C.S.A. § 2702(a)), a felony of the first degree. On July 18, 2013, the Appellant was sentenced to five to ten years' incarceration on CP-51-CR-0005516-2012, two and one-half to five years'

incarceration on CP-51-CR-0005514-2012, and two and one-half to five years on CP-51-CR-0005515-2012, all to run consecutive for a total period of ten to twenty years' incarceration. Under these circumstances, the Appellant filed a direct appeal with the Superior Court of Pennsylvania on August 16, 2013. After reviewing the record, Appellant's counsel submitted a statement indicating that counsel intended to file a brief pursuant to **Anders v. California**, 386 U.S. 738[, 87 S.Ct. 1396, 18 L.Ed.2d 493] (1967) and **Commonwealth v. Santiago**, [602 Pa. 159, 978 A.2d 349 (2009)], as counsel was unable to identify a non-frivolous appellate issue. On February 27, 2014, the Superior Court discontinued Appellant's initial appeal.[1]

On March 19, 2014, Appellant filed a Post-Conviction Relief Act Petition and [a counseled] Amended PCRA Petition on January 22, 2015. On December 1, 2016, the Honorable Sean F. Kennedy entered an order granting post-conviction collateral relief.[2] The Commonwealth filed a Motion to Dismiss the PCRA Petition, and the [c]ourt granted the motion to dismiss on May 4, 2017. Shortly thereafter, the Appellant filed a timely Notice of Appeal on May 12, 2017. On November 1, 2017, Appellant's counsel filed a Statement of [Errors] Complained of on Appeal, and on November 2, 2017, a Supplemental Statement of [Errors] Complained of on Appeal.

(PCRA Court Opinion, filed March 13, 2018, at 1-4) (some internal citations omitted).

---

[1] According to the certified record, Appellant's counsel actually discontinued and withdrew the direct appeal on February 27, 2014.

[2] Before the PCRA court on May 4, 2017, the Commonwealth initially consented to limited post-conviction relief in the form of withdrawing Appellant's guilty plea and providing Appellant with the options of either (1) accepting a new stipulated plea to the sentence imposed on July 18, 2013, or (2) proceeding to a trial. Appellant rejected both options. Appellant instead insisted the court should vacate the judgment of sentence and impose a new sentence consistent with the Commonwealth's previously withdrawn plea offer of 2-5 years.

Appellant raises one issue for our review:

WHETHER THE PCRA COURT ERRED IN NOT REDUCING [APPELLANT'S] SENTENCE TO THE SENTENCE OFFERED BY THE COMMONWEALTH WHEN [APPELLANT] HAD ACCEPTED THIS OFFER, BUT TRIAL DEFENSE COUNSEL THROUGH INEFFECTIVENESS REJECTED IT, AS A RESULT OF WHICH [APPELLANT] WAS SUBJECTED TO A MORE SEVERE SENTENCE WHEN HE PLEADED GUILTY?

(Appellant's Brief at 2).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190 (Pa.Super. 2012). Traditionally, credibility issues are resolved by the trier of fact who had the opportunity to observe the witnesses' demeanor. *Commonwealth v. Abu-Jamal*, 553 Pa. 485, 720 A.2d 79 (1998), *cert. denied*, 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999). Where the record supports the PCRA court's credibility resolutions, they are binding on this Court. *Id.*

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Sean F.

Kennedy, we conclude Appellant's issue merits no relief. The PCRA court opinion comprehensively discusses and properly disposes of the question presented. (*See* PCRA Court Opinion, filed March 13, 2018, at 7) (finding: no plea agreement exists unless and until it is presented to trial court, and trial court accepts it; here, Appellant had no right to specific performance of Commonwealth's plea offer, as Commonwealth withdrew offer before presentation to and acceptance by trial court; therefore, trial court did not err in refusing to impose withdrawn plea offer). The record supports the PCRA court's decision. Accordingly, we affirm based on the PCRA court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/19

Circulated 03/13/2019 04:29 PM

**FILED**

2018 MAR 13 AM 11: 52

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

IN THE COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  :  CP-51-CR-0005514-2012
:  CP-51-CR-0005515-2012
vs.  :  CP-51-CR-0005516-2012

ROBERT S. KARPEH

CP-51-CR-0005514-2012 Comm. v. Karpeh, Robert S
Opinion

|||||||||||||||||||||||||
8081094911

SUPERIOR COURT
NO. 1549 EDA 2017

**OPINION**

KENNEDY, SEAN F., J.            March 13, 2018

Robert S. Karpeh ("the Appellant") appeals from a judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his conviction for Aggravated Assault (18 Pa.C.S.A. §2702(a)). The relevant facts and procedural history are as follows.

## FINDINGS OF FACT

On April 20, 2012, at approximately 1:50am, Philadelphia Police Officer Perez was patrolling the 6200 block of Woodland Avenue in Philadelphia when she was flagged down by a male civilian in reference to a black male in an orange shirt, the Appellant, causing a disturbance inside of Lynn's Bar located at 6206 Woodland Avenue. N.T. 5/13/2013 at 31.

Officer Perez notified police radio and requested backup. *Id.* Officer Juszczyszyn arrived on location and went inside the bar with Officer Perez where they located the male in the orange shirt. *Id.* The officers informed the Appellant that he had to leave at the request of the bar employees. *Id.* at 32. The Appellant, Robert Karpeh, refused to leave. *Id.* The officers then ordered the Appellant to leave and he continued to refuse. *Id.* The Appellant then stood up and informed the officers that he needed his bag while pointing behind the officer. *Id.*

Officer Juszczyszyn picked up the Appellant's bag and attempted to hand it to him. *Id.* As Officer Juszczyszyn was attempting to hand the Appellant the bag, the Appellant slapped the officer's arm away. *Id.* Officer Juszczyszyn and Perez then grabbed the Appellant by his wrist in an attempt to remove him from the bar, but the Appellant pulled away from Officer Perez as Officer Juszczyszyn was still holding onto the Appellant's other arm. *Id.* At this point in time, the Appellant stepped backwards and he pulled Officer Juszczyszyn behind the bar and shoved Officer Juszczyszyn against the bar while holding the officers arm up against the wall. *Id.* at 32–33. Officer Perez then called for additional backup while attempting to get the Appellant off of Officer Juszczyszyn. *Id.* at 33. Officer Perez then drew her asp and struck the Appellant several times in the leg attempting to free Officer Juszczyszyn from the Appellant's grasp. *Id.*

Some patrons of the bar came to the aid of the officers prior to additional units arriving on location. *Id.* Officer Gerard, Officer DeJesus, and some other officers arrived on location and observed Officer Perez and Officer Juszczyszyn struggling with the Appellant. *Id.* As the officers were arriving, Officer Juszczyszyn was able to push the Appellant off of him and back against the display of the liquor bottles. *Id.* The Appellant then began grabbing liquor bottles and throwing them at the officers, striking Officer Perez and Officer Gerard. *Id.* The Appellant also struck Officer Juszczyszyn over the head with a clear glass liquor bottle, causing a deep laceration that began to bleed heavily. *Id.* at 34. Officer Gerard and DeJesus were able to pin the Appellant against the bar and attempted to handcuff him. *Id.* The Appellant grabbed a hold of the bar while still struggling with the officers, making it difficult to place handcuffs on him. *Id.* Officer Juszczyszyn then produced his taser and yelled, "Get back, taser," and began to attempt to dry shock the Appellant. *Id.* As Officer Perez was holding onto the Appellant, she was exposed to the taser shock. *Id.* The officers were finally able to subdue the Appellant after ten

2

minutes and take him into custody. *Id.* After he was placed into custody, Officer DeJesus noticed that a taser prong had penetrated his right shoulder during the struggle. *Id.* Officer Perez, Gerard, Juszczyszyn, and DeJesus all sustained injuries as a result of the accident. *Id.*

Officer Perez was treated at Temple University Hospital for a closed head trauma as a result of being struck with a bottle, in addition to paralyses and temporary nerve damage as a result of being tased while struggling with the Appellant. *Id.* at 35. Officers Gerard and DeJesus were treated at HUP and were released. *Id.* Officer Gerard sustained a one inch laceration to his upper lip which required stitches while Officer DeJesus had to have the taser prong surgically removed and then received stitches to close up the incision. *Id.*

Officer Juszczyszyn was taken to HUP and was admitted in stable condition to be treated for injuries that he sustained to his head as a result of being struck with the bottle. *Id.* Officer Juszczyszyn also sustained injuries to his left hand that required surgery. *Id.* Most recently, Officer Juszczyszyn had nerve graph on his hand. *Id.*

## PROCEDURAL HISTORY

On April 20, 2012, Appellant was arrested and charged with Aggravated Assault (18 Pa.C.S.A. §2702(a)); Possession of an Instrument of Crime with Intent (18 Pa.C.S.A. §907(a)); Simple Assault (18 Pa.C.S.A. §2701(a)); Recklessly Endangering Another Person (18 Pa.C.S.A. §2705); Resisting Arrest (18 Pa.C.S.A. §5104); and Criminal Mischief (18 Pa.C.S.A. §3304(a)(4)). Following a preliminary hearing on May 7, 2012, all charges were held for court. By information filed on May 18, 2012, Criminal Mischief (18 Pa.C.S.A. §3304(a)(4)) was changed to Criminal Mischief – Tamper w/ Property (18 Pa.C.S.A. §3304(a)(2)). On May 13, 2013 the Appellant entered into a non negotiated guilty plea, which occurred before the Honorable Sean F. Kennedy. The Appellant pled guilty to three

3

counts of Aggravated Assault (18 Pa. C.S.A. §2702(a)), a felony of the first degree. On July 18, 2013, the Appellant was sentenced to five to ten years incarceration on CP-51-CR-0005516-2012, two and one-half to five years incarceration on CP-51-CR-0005514-2012, and two and one-half to five years on CP-51-CR-0005515-2012, all to run consecutive for a total period of ten to twenty years incarceration. Under these circumstances, the Appellant filed a direct appeal with the Superior Court of Pennsylvania on August 16, 2013. After reviewing the record, Appellant's counsel submitted a statement indicating that counsel intended to file a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) and *Commonwealth v. Santiago*, 2009 Pa. LEXIS 1784 (Pa. 2009), as counsel was unable to identify a non-frivolous appellate issue. On February 27, 2014, the Superior Court discontinued Appellant's initial appeal.

On March 19, 2014, Appellant filed a Post-Conviction Relief Act Petition and an Amended PCRA Petition on January 22, 2015. On December 1, 2016, the Honorable Sean F. Kennedy entered an order granting post-conviction collateral relief. The Commonwealth filed a Motion to Dismiss the PCRA Petition, and the Court granted the motion to dismiss on May 4, 2017. Shortly thereafter, the Appellant filed a timely Notice of Appeal on May 12, 2017. On November 1, 2017, Appellant's counsel filed a Statement of Matters Complained of on Appeal, and on November 2, 2017, a Supplemental Statement of Matters Complained of on Appeal.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

The Appellant's 1925(b) statement asserts three issues on appeal:

1. The Appellant's trial defense counsel was ineffective in rejecting the plea offer of the Commonwealth of 2 to 5 years in prison and when the Appellant pleaded guilty open before the trial court he received a more severe sentence.

2. Because of ineffectiveness of trial defense counsel, the trial court erred in not imposing the sentence negotiated by the parties of 2 to 5 years in prison.

4

3. The trial court erred in failing to conduct a colloquy to determine if the Appellant's decision to forgo a trial was knowing, intelligent, and voluntary and to determine if the Appellant knew the deportation import of his decision to forgo trial. See Pa. R. Crim. P. 590 and *Padilla v. Kentucky*, 559 U.S. 356 (2010).

## DISCUSSION

### I. Appellant has failed to establish by a preponderance of the evidence that his sentence resulted from ineffectiveness of trial counsel.

When appellate courts review such ineffective assistance of counsel claims, the appellate courts begin with the presumption that counsel was effective. *See Commonwealth v. Robinson*, 82 A.3d 998, 1005 (Pa. 2013). To prevail on an ineffectiveness claim, the appellant must satisfy, by a preponderance of the evidence, the performance and prejudice standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In Pennsylvania, appellate courts have applied *Strickland* by looking to three elements an appellant must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and, (3) appellant suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." *Commonwealth v. Cousar*, 154 A.3d 287, 296–97 (Pa. 2017). Additionally, if it is clear that an appellant has not demonstrated that "counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met." *See Commonwealth v. Albrecht*, 720 A.2d 693 (Pa. 1998). In regards to appellate counsel, a defendant must demonstrate (1) the underlying claim of trial counsel's ineffectiveness has arguable merit; (2) appellate counsel had no reasonable basis for failing to pursue the claim; and (3) but for appellate counsel's ineffectiveness, the result of direct appeal would have differed." *See Commonwealth v. Williams*, 863 A.2d 505, 513 (Pa. 2004). As with an ineffectiveness claim regarding trial counsel, "failure to satisfy any prong of the test will defeat an ineffectiveness claim." *Id.* For reasons that follow,

5

Appellant has failed to establish by a preponderance of the evidence that his sentence resulted from ineffectiveness of trial counsel.

The notes of testimony reflect that due to issues regarding Appellant's competency, it was unclear whether Appellant accepted or rejected the Commonwealth's plea offer. N.T. 5/4/2017 at 6–9. However, regardless of whether the plea offer was in fact accepted while Appellant was competent, "no plea agreement exists unless and until it is presented to the Court," and the Commonwealth reserves the right to withdraw a plea offer at any time before it is presented to the Court. *Commonwealth v. McElroy*, 665 A.2d 813, 816 (Pa. Super. Ct. 1995). Further, Appellant is not entitled to specific performance of the plea agreement where a plea agreement has "neither been entered of record nor accepted by the trial court." *McElroy*, 665 A.2d at 816; *Commonwealth v. Spence*, 627 A.2d 1176, 1184 (1993).

In *Commonwealth v. McElroy*, the Commonwealth reached an oral plea agreement with the Appellant, who was charged with, among other violations, reckless driving that caused an individual's death. *McElroy*, 665 A.2d at 815–16. The family of the deceased expressed outrage over the leniency of the plea, and as a result, the Commonwealth withdrew their plea offer. *Id.* The Superior Court of Pennsylvania held that the withdrawn plea offer was not enforceable because it was not presented and accepted by the trial court. *Id.* at 816.

Here, the Commonwealth stated numerous times in the record that the plea offer should have never been extended and it was an "error in that it was too low of an offer." N.T. 5/4/2017 at 7. Moreover, the Honorable Sean F. Kennedy noted that it was "amazing on the facts of this case that Appellant was offered 2 to 5." *Id.* at 9. As a result, Appellant cannot show that trial counsel's act or omission adversely affected the outcome of the proceedings because there is no

6

reasonable certainty that the Commonwealth would have executed the agreement and that the Court would have accepted the agreement based on the facts of this case.

II. **The offer of a negotiated plea which has not been accepted by the trial court is not enforceable, and therefore the trial court did not err by not imposing the negotiated plea sentence.**

"No plea agreement exists unless and until it is presented to the court." *McElroy*, 665 A.2d at 816. "When counsel for both sides have arrived at a plea agreement, they shall state on the record in open court, in the presence of the defendant, the terms of the agreement . . . ." Pa. R. Crim. P. 590. The Pennsylvania Supreme Court has held that "[w]here a plea agreement has been entered of record and has been accepted by the trial court, the [Commonwealth] is required to abide by the terms of the plea agreement." *McElroy*, 665 A.2d at 816 (quoting *Spence*, 627 A.2d at 1176). "However, prior to the entry of a guilty plea, the defendant has no right to specific performance of an 'executory' agreement." *Spence*, 627 A.2d at 1184.

As stated above, in *Commonwealth v. McElroy*, the Commonwealth reached an oral plea agreement with the Appellant, who was charged with, among other violations, reckless driving that caused an individual's death. *McElroy*, 665 A.2d at 815–16. The family of the deceased expressed outrage over the leniency of the plea, and as a result, the Commonwealth withdrew their plea offer. *Id.* The Superior Court of Pennsylvania held that the withdrawn plea bargain was not enforceable because it was not presented and accepted by the trial court. *Id.* at 816.

Similarly here, Appellant has no right to specific performance of the Commonwealth's plea offer, as it was never accepted by, nor presented to the trial court. Therefore, the trial court did not err by not imposing the plea offer.

III. **The Trial Court did not err in failing to conduct a colloquy to determine if the Appellant's decision to forgo a trial was knowing and voluntary, and to determine if the Appellant knew the deportation import of his decision to forgo trial.**

7

According to Pa. R. Crim. P. 590(A)(3), "the judge . . . shall not accept [a plea of guilty or nolo contendere] unless the judge determines after inquiry of the defendant that the plea is voluntarily and understandingly tendered. Such inquiry should appear on the record." On May 13, 2013, this Court conducted a guilty plea colloquy to confirm that the Appellant entered into his guilty plea intelligently and voluntarily. Specifically, the court confirmed that there was a factual basis for the plea, Appellant was aware of the permissible range of sentences and/or fine for the offense charged, Appellant understood the charges which he pled guilty to, Appellant understood that he had the right to trial by jury, Appellant understood that he is presumed innocent until found guilty, and Appellant was aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement. *See* N.T. 5/13/2013 at 21–31.

Regarding Appellant's knowledge of the deportation import of his decision to forgo a trial, the United States Supreme Court in *Padilla v. Kentucky* held that counsel, not the trial court, is required to inform a client whether his guilty plea carries a risk of deportation. *Padilla v. Kentucky*, 559 U.S. 356 (2010). Here, the burden was on Appellant's counsel, not the trial court, to inform and/or determine that Appellant knew the deportation import of his decision to forgo a trial.

## CONCLUSION

Based on the foregoing, it is respectfully suggested that the judgment of sentence entered in this matter against the Appellant be affirmed.

BY THE COURT:

_____

SEAN F. KENNEDY, J.

8

Commonwealth v. Robert S. Karpeh
CP-51-CR-0005514-2012
CP-51-CR-0005515-2012
CP-51-CR-0005516-2012
1925(b) Opinion

## PROOF OF SERVICE

I hereby certify that I am this 13th day of March, 2018 serving the foregoing Court Opinion upon the person(s) and in the manner indicated below, which service satisfies the requirement of Pa.R.Crim.P. 114:

Defense Counsel/Party:     John P. Cotter, Esquire
                           2541 S. Broad Street
                           Philadelphia, PA 19148

Type of Service: ( ) Personal      (x) First Class Mail      Other, please specify: _____

District Attorney:         Philadelphia District Attorney's Office
                           Chief – Appeals Unit
                           Three South Penn Square
                           Corner of Juniper & South Penn Square
                           Philadelphia, PA 19107-3499

Type of Service: ( ) Personal      (x) First Class Mail      Other, please specify: _____

**Date: 3/13/2018**

Jacqueline Porter
Law Clerk for Judge Sean F. Kennedy

9